THOMAS F. HANNON *et al.*, Plaintiffs-Appellants, *v.* TIMOTHY C. COUNIHAN *et al.*, Defendants.—(THE VILLAGE OF BARRINGTON *et al.*, Defendants-Appellees.)

Second District   No. 77-21

Opinion filed November 15, 1977.—Rehearing denied December 16, 1977.

510

John M. Janewicz and Bernard E. Epton, both of Epton & Druth, of Chicago, for appellants.

Diver, Brydges, Bollman, Grach & Riseborough, of Waukegan, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs, Thomas F. Hannon and Barbara A. Hannon, appeal from the order of the trial court dismissing their complaint as to defendants Village of Deer Park and Village of Barrington in Lake County.

This is an action for the recovery of damages alleged to have been sustained by plaintiffs in the construction of a house for them in Deer Park. Other defendants in separate counts of the complaint brought for these same damages are Boise Cascade Corporation, the manufacturer of the prefabricated home, Tau Builders, a partnership which was the general contractor for the construction of the home on plaintiff's lot and Swan Brothers Construction, Incorporated, the concrete subcontractor which performed the footing and foundation work for the house. We are not concerned with these defendants on this appeal and the case apparently is still pending against them in the trial court. After dismissal of the complaint as to the defendant villages, the court found no just reason to delay appeal as to them. Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).

The defendant villages were joined in a single count of the complaint which alleged that plaintiffs were the owners of land in Deer Park, had entered into a contract with Tau Builders in January 1975 to construct a home thereon and had paid out approximately $32,000 towards the cost of construction. It was further alleged that the Village of Deer Park had adopted a building code and had contracted with the Village of Barrington for it to provide inspectors to enforce compliance with the code within Deer Park, that a building permit application was submitted

to Deer Park by Tau Builders and was approved April 1, 1975, and that Tau Builders commenced construction and continued until the issuance of a "stop work" order by Deer Park and Barrington on September 10, 1975, for lack of a foundation inspection of the building. It was alleged that the roof was on and the house substantially completed when work was stopped and nothing further has been done to complete it.

Plaintiffs alleged they were free from any conduct causing this condition and these defendants are guilty of the following careless or negligent acts or omissions:

"(a) Failed to exercise adequate supervision and control over properties under construction within their jurisdiction;

(b) Failed to make frequent inspections of homes under construction within their jurisdiction;

(c) Allowed Plaintiffs' home to be substantially completed before discovering non-compliance with the applicable building code;

(d) Failed to use competent persons as building inspectors;

(e) Were otherwise careless and negligent."

Plaintiffs concluded by alleging damage and depreciation to their property as a consequence of defendants' acts and asking for a judgment of $85,000 against these defendants.

Defendants each filed motions to dismiss this count of the complaint alleging, first, that it fails to state a cause of action against them and, second, that each village defendant is immune from this action pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, pars. 1—101 through 10—101, hereinafter referred to as the Tort Immunity Act). After considering briefs and arguments the trial court granted defendants' motion to dismiss, predicating its decision on the issue of immunity and noted it found the villages' immunity was not waived by their possession of public liability insurance.

It is apparent, however, that the questions raised, and extensively argued by the parties, regarding governmental immunities and their waiver by the possession of public liability insurance by the villages (see Ill. Rev. Stat. 1975, ch. 85, pars. 2—105, 2—201, 2—207, 9—103(b)) would not be reached by this court if we should determine no cause of action against these defendants has been alleged in the complaint. (*Corcoran v. Village of Libertyville* (1977), 49 Ill. App. 3d 818, 821, 364 N.E.2d 467, 469.) For this reason we will address ourselves first to that issue.

At the outset we must note that the portions of the building ordinance of the Village of Deer Park relied on by plaintiffs are not cited or reproduced in the disputed complaint or elsewhere in the record of this case but are referred to at some length in plaintiffs' reply brief. It is also in that brief that plaintiffs state concisely that the cause of action relied upon

by them is the negligence of these defendants "in making inadequate or negligent inspections, or in failing to make an inspection and not stopping work when the building code was first breached." Plaintiffs further illustrate their understanding of the basis for their action by stating that by submitting his plans and paying the building permit fee, with knowledge the building code provides for periodic inspections to verify code compliance, the homeowner then rests on the knowledge his home will be built in accordance with the code standards. Plaintiffs contend, therefore, that the defendant villages must answer to them in damages because these defendants negligently failed to prevent plaintiffs' contractors or subcontractors from allegedly constructing plaintiffs' house in some manner contrary to the building code and thus requiring that construction be stopped.

Defendants contend, however, that plaintiffs have failed to demonstrate by the allegations of the complaint the existence of any duty owed to them by defendants nor have plaintiffs alleged sufficient facts to demonstrate any breach of such supposed duty. We agree and find that plaintiffs have not stated a cause of action against these municipal defendants. See generally *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 947-48, 338 N.E.2d 912, 916; *Harper v. Epstein* (1974), 16 Ill. App. 3d 771, 772-73, 306 N.E.2d 690, 691-92.

■■ ■ In the first instance we direct our attention to a suggestion contained in plaintiffs' argument that their cause of action arises from and is found in the Tort Immunity Act itself. It does not. The 1970 Illinois Constitution abolished the doctrine of sovereign immunity except as the General Assembly might provide by law. (Ill. Const. 1970, art. XIII, §4.) The General Assembly has enacted the Tort Immunity Act which statutorily created certain areas in which a local public entity or public employee may be immune from tort liability and provided circumstances under which such immunities or defenses would be waived. The Tort Immunity Act does not create any new liabilities for negligent acts or omissions which did not previously exist. In this case, sections 2—105 and 2—207 of the Tort Immunity Act, which declare certain immunities for negligent municipal inspections or failure to inspect property not owned by the municipality may not be coupled with section 9—103(b), waiving such immunity if public liability insurance is acquired, so as to create a new liability of these municipalities.

A determination of whether plaintiffs have a cause of action against defendants here must rest on a determination of whether defendants owed a duty to them in the circumstances shown by the allegations of the complaint.

■■ The Illinois courts of review have not directly addressed the question of what duties, if any, are owed to an individual member of the

public by a municipality for its negligent failure to enforce compliance with a municipal building ordinance by contractors who build a house for owners such as plaintiffs herein. The analogous cases, however, draw a distinction between ordinances which are designed to benefit the public at large and those designed for the benefit of individual members of that public. The failure to enforce the former will not raise a duty the violation of which could support a cause of action for damages against the municipality.

In *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26, an infant brought an action against the city for injuries resulting from ingestion of lead-based paint on the theory the city negligently failed to enforce a section of its housing code requiring that buildings be in good repair and habitable. While plaintiff also contended the Tort Immunity Act did not protect the city under the circumstances, the court did not reach that issue in determining defendants did not owe a special duty to plaintiff and affirmed the trial court's dismissal of the complaint reasoning that:

> "This ordinance was enacted to benefit the public health and safety of the people of the city. Its enforcement was a governmental function rather than a ministerial or proprietary act. The ordinance did not give rise to any special duty to the plaintiff or to any particular person different from the public at large. (See: *Gardner v. Village of Chicago Ridge*, 71 Ill. App. 2d 373.) If the failure of the city to enforce this ordinance should render it liable for injuries sustained thereby, the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutary legislative enactments." 48 Ill. 2d 20, 24-25, 268 N.E.2d 26, 29.

Similar analysis was applied in *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293, where the court considered whether a cause of action premised on negligence existed in favor of plaintiff against a city for failure to protect public property from subversion to private uses. The city had purchased a water tower which contained on it advertisement of a shopping center. When the city neglected to remove the advertisement the owner of a rival shopping center sought damages from the city resulting from the city-owned advertisement for plaintiff's competitor on the water tower. The court considered the element of a legal duty was determinative of plaintiff's claim and found there was none, stating:

> "Where the duty is owed to the public generally, no action lies on behalf of an individual for failure of performance, but where the duty is intended to benefit the individuals composing the public,

failure to perform such duty gives rise to a cause of action in favor of anyone injured by such failure. (65 C.J.S., *Negligence* §4(8), at 499 (1966).) * * * Here, the City of O'Fallon owed a duty to the general public to protect public property from subversion to purely private uses. This duty is not transferable to an individual in the event the city is negligent in performing the duty." 43 Ill. App. 3d 348, 358-59, 356 N.E.2d 1293, 1302.

Other jurisdictions have persuasively considered this question on a factual basis similar to that in the instant case. In *Hoffert v. Owatonna Inn Towne Motel, Inc.* (1972), 293 Minn. 220, 199 N.W.2d 158, a cross-plaintiff, who was damaged as a result of a motel fire, brought suit against the city on the theory his damages resulted from the city's negligence in issuing a building permit authorizing remodeling of the motel in a manner violative of the city's building code. There, as here, the complaint was dismissed as not stating a cause of action against the city. In affirming the trial court's decision, the Supreme Court of Minnesota also considered that by statute certain defenses of immunity from tort liability for acts of municipalities performed in the exercise of a governmental or proprietary function had been abolished and, that although discretionary acts were excepted, the purchase of liability insurance waived such exception thus making the municipality subject to suit, in that event, for discretionary acts. The court found, however, that these statutory provisions merely removed the defense of immunity but did not create any new liability for a municipality. The court stated plaintiffs were required to show a breach of a duty owed them in their individual capacities and not merely a breach of some obligation owed the general public, stating:

"The purpose of a building code is to protect the public. This is well stated in 7 McQuillin, Municipal Corporations (3 ed.) §24.507, p. 523:

'* * * The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals.'

Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to

be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises." 293 Minn. 220, 222-23, 199 N.W.2d 158, 160.

In *Ascrizzi v. Kaufman* (1977), 57 App. Div. 2d 643, 393 N.Y.S.2d 216 (memorandum decision), plaintiffs brought an action against the Town of Thompson, among others, alleging they sustained damages due to the failure of plaintiffs' contractor to connect a structure constructed on plaintiffs' lot to the town's central sewerage system. They alleged negligence on the part of the city in failing to properly inspect the premises to determine whether the construction was in compliance with the town building code which required the connection. The trial court dismissed the complaint because it stated no cause of action against the city and the appellate court affirmed stating:

"It has been well established that where, as here, a municipality acts in a governmental capacity for the protection of the general public, it will not be liable for a failure to furnish effective protection to a particular individual to whom it owes no special duty (*Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635; *Steitz v. City of Beacon*, 295 N.Y. 51, 64 N.E.2d 704; *Murrain v. Wilson Line, Inc.*, 270 App. Div. 372, 59 N.Y.S.2d 750, affd. 296 N.Y. 845, 72 N.E.2d 29; *Carroll v. City of New York*, 37 Misc. 2d 563, 234 N.Y.S.2d 954, affd. 25 A.D.2d 841, 270 N.Y.S.2d 146; *Meadows v. Mineola*, 190 Misc. 815, 72 N.Y.S.2d 368)." 57 App. Div. 2d 643, ___, 393 N.Y.S.2d 216, 218.

In *Georges v. Tudor* (1976), 16 Wash. App. 407, 556 P.2d 564, actions were commenced by various parties having leasehold or ownership interests in a building for damages arising out of the collapse of the building while being renovated. Defendant, City of Seattle, was granted a partial summary judgment on defendant contractor's cross-claim against it for damages and indemnity which alleged the city was negligent in issuing a building permit and in inspecting the premises. In affirming the trial court's judgment, the appellate court determined that the most pivotal of the traditional negligence elements to be proved in the claim against the city was whether a duty was owed by the city to the contractor. The court noted that both enactment and enforcement of building codes, through inspections, is a service provided by a municipality for the benefit of its citizens and that the general purpose of

building codes, permits and inspections is to protect the public and not to insure that each building is constructed in complete compliance with building codes and ordinances. The court held that the city owed no duty to the contractor individually in issuing the permit or inspecting the building in question and stated that to hold otherwise would cause the city to become a guarantor of each and every construction project.

The court in *Georges* also noted that the contractor's contention that the statutory abrogation of sovereign immunity in the State of Washington rendered the city liable for its negligent acts was without merit because such abrogation merely removed the defense of immunity but did not create any new liability for the municipality.

■■ There are no allegations in plaintiffs' complaint suggesting that Deer Park's building ordinance was enacted for any purpose other than the welfare of the general public nor does it set forth any basis for deviation from the general rule that in the absence of a special duty owed to plaintiffs, different from that owed to the public at large, no cause of action for negligent inspections can exist. (*Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26; see also *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; compare *Marshall-Putnam Farm Bureau, Inc. v. Shaver* (1973), 12 Ill. App. 3d 402, 299 N.E.2d 10.) To recognize such a duty here would be to make a municipality substantially an insurer of all construction it undertook to inspect and control through its building codes and would likely discourage all efforts at such control.

For these reasons we find plaintiffs' complaint does not state a cause of action against the village defendants and there is then no need to consider the question of immunities or their waiver under the Tort Immunity Act.

The judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

SEIDENFELD and BOYLE, JJ., concur.