(No. 48973.

FIRST NATIONAL BANK IN DE KALB, Conservator, *et al.*, Appellants, v. THE CITY OF AURORA *et al.*, Appellees.

*Opinion filed Jan. 20, 1978.—Rehearing denied March 30, 1978.*

2

MORAN, J., took no part.
UNDERWOOD, J., dissenting.

Stephen J. Schlegel and Stansell & Rahn, of Chicago, and Edward F. Diedrich, of DeKalb (Ivar R. Azeris and James Buck, of counsel), for appellants.

Roland C. Upton, Philip J. McGuire, and Philip C. Ruddy, Corporation Counsel, of Aurora (Morrill, Koutsky, Chuhak and Upton, of Chicago, of counsel), for appellee City of Aurora.

MR. JUSTICE CLARK delivered the opinion of the · court:

This is an action for personal injuries, resulting from a collision of two cars at an uncontrolled intersection in Aurora and suffered by Allen Jardine, the driver of one of the automobiles. The suit was brought by Jardine and his wife, Susanne Jardine, in the circuit court of Kane County. The plaintiffs' amended complaint was ordered dismissed by that court. A subsequent motion to vacate that order with leave to file another amended complaint, which the parties refer to as the "Second Amended Complaint," was denied. The appellate court affirmed (41 Ill. App. 3d 326), and we granted leave to appeal (58 Ill. 2d R. 315).

On November 12, 1971, Jardine was driving west on Marsellaise Avenue. His 1971 Capri collided with a car owned by Calvin Shempert and driven by Clayton Shempert and traveling south on Evanslawn Avenue, at the intersection of the two streets. A year later, Jardine and his wife filed a complaint against the city of Aurora. (A separate complaint was filed in 1973 by Jardine alone against Ford Motor Company, the manufacturer of his car; the dealership; and Clayton and Calvin Shempert.) The complaint against Aurora alleged that Aurora owed Jardine a duty to maintain the intersection in a reasonably safe manner and to provide traffic controls but that Aurora

instead negligently allowed the intersection to remain uncontrolled, negligently allowed obstructions near the intersection, and "negligently permitted a large tree to obstruct the view of drivers such as plaintiff and others so as to create a dangerous condition" at or near the intersection. Plaintiffs also alleged Aurora "knew or should have known" of the condition. In its motion to strike and dismiss, Aurora replied that the complaint failed to state a cause of action and failed to locate the tree or obstructions; and that the defendant has no duty to provide traffic control devices. The circuit court, in June 1973, ordered the complaint stricken with leave given to file an amended complaint. Mr. and Mrs. Jardine filed an amended complaint in July 1973, but a month later the court continued consideration of the amended complaint to allow for the addition of parties.

On May 23, 1974, the court ordered the consolidation of the two cases initiated by Jardine. That same day another amended complaint was filed. That amended complaint differed from the previous amended complaint and the original complaint in several ways. Counts I and II focused on the defendants other than Aurora, while counts III (relating to Jardine) and IV (relating to Mrs. Jardine) dealt with Aurora, the only defendant this appeal is concerned with. First National Bank in De Kalb, as conservator for Jardine, took over prosecution of the case for Jardine. And, the most significant difference, the amended complaint set out its allegations in more detail and alleged the violation of State statutes and city ordinances. Repeating the allegation of a duty owed to Jardine, the amended complaint then alleged that "a large, dense evergreen tree" with "a line of dense bushes" was at and near the intersection so as to constitute a public nuisance in violation of State law (Ill. Rev. Stat. 1971, ch. 100½, par. 26) and city ordinance (sections 42—16 and 42—19 of the Aurora Municipal Code); that the tree and

bushes obscured "the vision of motorists" on approaching the intersection; and that Aurora had notice or should have known of the condition. Further allegations were specified in paragraph 7:

"(c) Failed to give adequate or any notice or warning to motorists lawfully upon the public way that said intersection was made dangerous by virtue of the existence of obstructions;

(d) Negligently and carelessly permitted said intersection to be obstructed in a manner violative of the provisions of chapter 100½, section 26, Illinois Revised Statutes, 1971, and in so doing violated the provisions of section 42—20 of the Municipal Code of the City of Aurora;

(e) Negligently and carelessly failed to erect traffic control or warning signs or devices when such action should have been taken in view of the particular hazards in existence at said intersection, all in violation of the provisions of section 27—212 of the Municipal Code of the City of Aurora;

(f) Negligently and carelessly failed to exercise due care to maintain its property in a reasonably safe condition in violation of the provisions of chapter 85, section 3—102, Illinois Revised Statutes, 1971;

(g) Negligently and carelessly failed to provide regulatory traffic control devices, stop signs, yield right-of-way signs, or other regulatory devices, when such devices were necessary to warn of a condition which endangered the safe movement of traffic within the meaning of and violative of the provisions of chapter 85, section 3—104 of the Illinois Revised Statutes, 1971;

(h) Failed to remove or take any action whatsoever, to cause the repair or alleviation of the unreasonably dangerous condition of said intersection;

\* \* \*

(j) Carelessly and negligently permitted large bushes and a tree to obstruct the view of drivers such as plaintiff and others so as to create a dangerous condition likely to cause injury and damage to plaintiff and others lawfully upon said public way."

Finally, the amended complaint charged that Aurora's acts

or omissions were the proximate cause of Jardine's injuries.

By order of the circuit court on December 3, 1974, the amended complaint was dismissed and Aurora was dismissed as a defendant, but the cause of action was to continue against the other defendants. The court also found "no just reason to delay the appeal or enforcement of this order." The plaintiffs filed a motion, not contained in the record, to vacate the order of dismissal of December 3, and for leave to file a second amended complaint. This complaint was essentially the same as the previous amended complaint with two notable additions: an affidavit of a land surveyor that the "tree and its entire spread are located on property within right of way *** under the jurisdiction" of Aurora, on the northeast corner; and further allegations of a violation of Aurora's municipal code (section 46–4, prohibition of the "planting and by implication, the maintenance" of a tree within 20 feet of an intersection). On January 2, 1975, after a fairly lengthy recitation or review of the reasons for doing so, the circuit court, finding no reason to delay the appeal, denied the plaintiffs' motion to vacate and leave to file the second amended complaint. At the end of the proceedings, the presiding judge expressed his feeling that no circuit court enjoyed acting as an "Appellate Court over another Circuit Judge."

The basic issue before us is whether the plaintiffs' amended complaint states a cause of action. Aurora contends that not only was the circuit court correct in dismissing the amended complaint on December 3, 1974, because it failed to state a cause of action, but that that was a final appealable order. Moreover, the circuit court properly refused to vacate that order and denied leave to file plaintiffs' second amended complaint. On the other hand, the plaintiffs would have us hold that their complaint, amended complaint (filed May 23, 1974), and

second amended complaint (of January 2, 1975) all stated a cause of action. They further maintain that it was error for the trial court to deny them leave to file the second amended complaint.

At the outset, we note that the plaintiffs' notice of appeal indicates that the appeal is from the December 3, 1974, order of dismissal. The intent of that order is clear. It was a final judgment as to fewer than all the parties, Aurora alone, and there was no reason to delay an appeal. (58 Ill. 2d R. 304(a).) Hence, the circuit court did not give leave to file another amended complaint. Plaintiffs were well aware that this order was a final judgment because they explicitly state in their notice of appeal that their motion to vacate, denied January 2, 1975, was made pursuant to section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 68.3, motions after judgment in nonjury cases). Once judgment is entered, there is no right to amend a complaint other than "to conform the pleadings to the proofs." Ill. Rev. Stat. 1973, ch. 110, pars. 46(1), (3); 58 Ill. 2d R. 304; *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 136.

Thus the only issue before us involves the amended complaint which was dismissed December 3, 1974. That issue is whether that amended complaint sets forth a cause of action. We believe it does.

The Civil Practice Act tells us that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1973, ch. 110, par. 33(3).) Although true that notice pleading, "which prevails under the federal rules [citation], is not sufficient under" Illinois law (Jenner & Tone, Historical & Practice Notes, Ill. Ann. Stat., ch. 110, par. 42 (Smith-Hurd 1968)), no "pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim ***" (Ill. Rev. Stat. 1973, ch. 110, par. 42(2)). Moreover, Illinois courts have generally

held that a complaint should be liberally construed. (*E.g.,* *Smyth v. Kaspar American State Bank* (1955), 6 Ill. App. 2d 64, 76, *aff'd* (1956), 9 Ill. 2d 27.) This, of course, does not mean, as Jenner and Tone point out above, that the plaintiffs are relieved "of the necessity of stating a cause of action." Ill. Ann. Stat., ch. 110, par. 42, Historical & Practice Notes.

We believe that was done, however. This court has held that "the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence, and that the party injured thereby has a cause of action, provided he comes within the purview of the particular ordinance or statute, and the injury has a direct and proximate connection with the violation." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417-18.) In *French v. City of Springfield* (1976), 65 Ill. 2d 74, the plaintiff, who had been traveling on a one-way, three-lane street, under repair and with barricades blocking almost one and a half lanes, was seriously injured when she struck a utility pole. The defendant had failed to apply for and receive, from the city clerk, a permit to raise the barricades to do the repair work as required by city ordinance. This court found the question before it to be whether the injured party came within the ordinance. This court also found that the plaintiff was so protected and that it was properly left to the jury to determine whether the violation was a proximate cause of the injury. 65 Ill. 2d 74, 79; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74.

In the case before us, two of the city ordinances, cited by the plaintiffs as having been violated, are:

"No person owning or occupying any land or premises within the corporate limits of the city shall plant, construct or maintain upon said premises any hedges or board fences or other structure which will *obstruct the view of any person driving along the streets of the city and approaching the intersections* thereof, which is of a height greater than four (4) feet above the crown of the

street, nor plant or maintain any plant, shrub, bush or other vegetation tending to obstruct such view, and which is of a height greater than four (4) feet above the crown of the street, on any lot abutting on intersecting streets nearer the point of intersection of the lot lines than five (5) feet plus the width of the building line setback established for said lot by the city." (Emphasis added.) (Aurora Code, ch. 42, sec. 16.)

"The streets and alleys in the city shall be kept free and clear of all obstructions, encumbrances and encroachments, for the use of the public, and shall not be used or occupied in any other way than as herein provided." (Aurora Code, ch. 42, sec. 19.)

There should be little doubt about the intent of the two provisions to provide protection for those traveling the streets. We find *French v. City of Springfield* (1976), 65 Ill. 2d 74, controlling. *Cf. Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151.

Issue may be taken with the adequacy of the amended complaint regarding the location of the tree. We do not approve the careless manner with which the amended complaint treated that specific allegation: a large tree, with bushes, "existed at and near said intersection." Only the second amended complaint alleged that it was on city or city-controlled property. However, like the appellate court, we find Aurora was sufficiently advised about its location. Moreover, even if it had been on private property, Aurora, under its ordinances, still had a duty to remove it:

"Whenever the owner or person in possession or control of any obstruction or encroachment in or upon any street, sidewalk or public ground in the city shall refuse or neglect to remove the same within twenty (20) days after notice, or without notice if the owner cannot be readily found for the purpose of such notice, the same shall be deemed a nuisance, and *it shall be lawful for the police department or the department of streets, and it is hereby made their duty,* to summarily remove or take down the same or cause the same to be removed or taken

down, and the expense thereof shall be recoverable of such owner. And every person who shall oppose or resist the execution of the orders of said department of streets and police department in the premises shall be guilty of a misdemeanor." (Emphasis added.) Aurora Code, ch. 42, sec. 70.

The trial court made much of the immunity of governmental units in tort actions. Although that question is not relevant now, given *French* and the allegations of violations of Aurora's municipal code above, we want to point out that, beginning with *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, there had been a welcomed erosion of that doctrine. The erosion culminated in the disavowal of sovereign immunity in the 1970 Constitution: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Art. XIII, sec. 4.) Although the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 1–101 *et seq.*) offers seemingly broad protection to the actions of governmental units, that protection or immunity is not absolute. This court has clearly established the rule that once a governmental unit "adopts a plan in the making of public improvements," it owes a duty to a plaintiff to maintain those improvements. (*Johnston v. City of East Moline* (1950), 405 Ill. 460, 466; *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177.) In this case, we are unable to say that Aurora did adopt a plan of public improvement. However, Aurora's own ordinances *and* the allegation of violations thereof negate the immunity from suit.

Furthermore, as we noted above in the analysis of *French v. City of Springfield* (1976), 65 Ill. 2d 74, where a municipal corporation has been found to have violated its own ordinances, which violation gives rise to injury, it is for the jury to determine whether that violation was a proximate cause of the injury.

Finally, Aurora, relying on the appellate court

opinion's discussion of foreseeability, contends that the plaintiffs failed to allege any facts supporting a duty regarding the existence of a tree. We agree with Aurora that our society is not one comprised of subterranean inhabitants: homes and plants do to some extent interfere with traffic visibility. This is expected. However, as the amended complaint alleged and as this court has held, there is a duty of ordinary care owed even by municipal corporations to keep streets and sidewalks safe for the use of those who are themselves exercising ordinary care. (*Storen v. City of Chicago* (1940), 373 Ill. 530, 534.) This is a question of law. (See *Cunis v. Brennan* (1974), 56 Ill. 2d 372.) It then becomes a question of fact whether the standard of conduct, proceeding from this duty, was violated by Aurora's acts or omissions. See generally W. Prosser, Torts 205 *et seq.* (4th ed. 1971).

A jury would determine the questions of whether the tree interfered with the ability to see an approaching car or even the existence of an intersection; whether this violated the required standard of conduct (*i.e.*, whether it was reasonably foreseeable that the existence of the tree might result in injury); and whether Aurora's alleged acts or omissions were a proximate cause of Jardine's injury. (*Cf. Goodrich v. Sprague* (1941), 376 Ill. 80, 89. See generally the discussion of foreseeability in 1 J. Dooley, Modern Tort Law 214-19 (1977).) The plaintiffs' amended complaint did not allege specifics about the location of the tree. Yet there was enough to state a cause of action.

For the reasons stated, we reverse the judgments of the appellate and circuit courts and remand to the circuit court for further proceedings.

*Reversed and remanded.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, dissenting:

For the reasons stated in the well-reasoned and unanimous opinion of the appellate court, I would affirm its judgment.