DEANA PLESNICAR, a Minor, by Arlene Plesnicar, her Mother and Next Friend, Plaintiff-Appellant, *v.* ESTHER KOVACH *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-2082

Opinion filed December 28, 1981.

Roland C. Upton and William J. O'Connor, both of Chicago, for appellant.

Schaffenegger, Watson and Peterson, Ltd., and Lenard C. Swanson and Kathy Pinkstaff Saxton, all of Chicago (Jack L. Watson and Wildman, Harrold, Allen & Dixon, of counsel), for appellees.

JUSTICE WILSON delivered the opinion of the court:

Plaintiff appeals from an order of the trial court striking counts II, III and IV of her second amended complaint. On appeal, she contends that counts II, III and IV allege proper causes of action against defendants. We affirm the trial court. The pertinent facts follow.

In count I of the complaint, plaintiff, a minor, alleges that she suffered severe and permanent injuries when she was struck by Esther Kovach's car while she was crossing St. Charles Road in Berkeley, Illinois. Count II was directed against the Village of Berkeley (Village). She alleges that the intersection of St. Charles Road and Wolf Road was unreasonably dangerous in that it carried a high volume of traffic and the traffic lights at no time prohibited the movement of traffic so as to allow a pedestrian to cross this road without being endangered. She further alleged that Village was aware of this danger and the fact that minors attending the junior high school would be required to attempt to cross this intersection. Specifically, the complaint alleges the Village committed these wrongful omissions:

(a) Failed to provide crossing guards to assist minors to cross the said intersection.

(b) Failed to post signs to warn minors of the unusual dangers of the intersection.

(c) Failed to post adequate warnings to minors of the unusual dangers posed by the intersection.

(d) Otherwise carelessly and negligently operated, managed and controlled those portions of the said intersection under its control and the approaches thereto.

Count III alleged that the school district, with knowledge of the dangerous intersection, conducted and invited students to participate in a program of extracurricular activities at the junior high school. Further, the school district, which provided school bus transportation for the students, failed to provide such service for students remaining after regular hours to participate in the extracurricular activities. As such, she was required to walk home after remaining in school as a participant in an extracurricular activity and was injured as she attempted to cross the intersection. Specifically, plaintiff alleges that the school board:

(a) Failed to provide a system of bus transportation to transport students remaining after regular class hours to participate in extracurricular activities to their homes.

(b) Provided a bus system for transportation of students which was defective, in that it did not provide transportation for students remaining after normal class hours to participate in extracurricular activities to their homes.

Count IV contains allegations of wilful and wanton acts and/or omissions on the part of the school district for failing to (1) provide adequate supervision for students upon their dismissal; (2) warn students of the dangerous intersection; (3) provide adequate assistance to students crossing the intersection; and (4) transport students leaving the school after extracurricular activities.

The Village of Berkeley filed its motion to dismiss for failure to state a cause of action. It argued that the operation of the traffic lights at the intersection did not constitute an unusual danger and it had no duty to provide crossing guards.

The school board also made a motion to strike and dismiss, alleging that it had no duty to provide bus service for students participating in extracurricular activities and that the bus system was not defective for failure to do so.

The trial court granted the motion to dismiss counts II, III, and IV, ruling that no legal duty existed and relying on the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 et seq.).

OPINION

Plaintiff initially contends that count II of her complaint properly states a cause of action against the Village in that the Village provided an

inadequate traffic control device at the intersection in question and failed to provide crossing guards to assist minors across the intersection.

Our supreme court has held that once a governmental unit "adopts a plan in the making of public improvements," it owes a duty to a plaintiff to maintain those improvements. (*Johnston v. City of East Moline* (1950), 405 Ill. 460, 466; *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 251 N.E.2d 227.) Further, while the Local Governmental and Governmental Employees Tort Immunity Act offers broad protection to actions of governmental units, it does not offer municipalities absolute immunity from tort actions. (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*; *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) However, a plaintiff is not relieved of the necessity of stating a cause of action (*First National Bank*), which in this pending matter, she does not.

■■ It appears that the signals at the intersection were standard traffic lights conforming to the State Manual and Specifications used throughout the State of Illinois. (See Ill. Rev. Stat. 1979, ch. 95½, par. 11—304 *et seq.*) Thus, a pedestrian wishing to cross the intersection could do so when the signal facing him permitted him to do so, and all vehicular traffic was required to yield to all pedestrians lawfully within the intersection. Plaintiff's complaint does not allege that the operation of the traffic signals were defective, nor does it allege that the Village failed to maintain the intersection in a reasonably safe manner. Further, plaintiff has not cited any authority wherein the Village has a duty to provide crossing guards for school children at street intersections. Thus, plaintiff has failed to adequately state a cause of action against the Village.

Next, plaintiff asserts that the facts pleaded in count III form the basis of a negligence action against the school board. Essentially, plaintiff alleges that the school district failed to exercise reasonable care in the selection and provision of a bus system for transportation of students. The bus system was defective in that it did not transport children participating in after school extracurricular activities. We disagree.

Section 29—3 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 29—3) provides that school boards shall provide free transportation to students residing 1½ miles or more from any school to which they are assigned.[1] This transportation is provided where walking may constitute a serious hazard to the safety of the students due to vehicular traffic and is *not* to be provided if there is adequate public transportation. The language of the statute grants the school board authority to make a determination as to what constitutes a serious safety hazard and provides immunity for the school board for decisions made in accordance with the

---

[1] The language of plaintiff's complaint would seek to have the school district provide transportation to *all* students who participated in after-hour activities.

statute. Further, other provisions of the statute allow the school board discretion in providing transportation from any school-sponsored activities. (Ill. Rev. Stat. 1979, ch. 122, pars. 29—3.1, 29—3.4.) Moreover, the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*) provides immunity for a public body in the exercise of its discretion. Ill. Rev. Stat. 1979, ch. 85, par. 2—201.

Plaintiff principally relies on *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323, in seeking to hold the school district liable for failing to exercise reasonable care in the selection of and provision of a bus system for transportation of students. It is plaintiff's contention that this failure constituted negligence because the system did not transport students who stayed after regular hours to participate in extracurricular activities. It is well settled and plaintiff acknowledges that parents are not liable for injuries to children absent wilful and wanton misconduct. The School Code (Ill. Rev. Stat. 1979, ch. 122, pars. 24—24 and 34—84a) confers upon educators *in loco parentis* status and our supreme court has held that this status extends to nondisciplinary as well as disciplinary matters. *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705; *Nielsen v. Community Unit School District No. 3* (1980), 90 Ill. App. 3d 243, 412 N.E.2d 1177.

In *Gerrity*, plaintiff alleged that the school district had negligently provided him with an inadequate and defective football helmet. The trial court dismissed the complaint, but our supreme court held that it was not unduly burdensome or inconsistent with the intended purposes of the immunity conferred by the School Code (Ill. Rev. Stat. 1973, ch. 122, pars. 24—24, 34—84a) to hold school districts to the duty of ordinary care in the furnishing of equipment for students' use in school sports events. Thus, the school district was not immune from a student's suit for ordinary negligence alleging that the district furnished a defective helmet for use at a school football game. Similarly, in *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 412 N.E.2d 447, our supreme court upheld a determination of a school district's liability for injuries sustained by a player in a "powder puff" football game. The court held that the evidence in the case sufficiently indicated that the activity was connected with the school program although the school district contends that it did not authorize or sponsor the game. The school district was required to furnish the proper equipment for the personal protection of the players.

However, the facts of these cases are not analogous to the circumstances in the manner before us. In those instances, the school districts were held liable for negligence in that the provided equipment was not fit for the purpose intended or the school district breached its affirmative duty to provide necessary athletic equipment for the school activity to

prevent serious injuries. In the pending matter, plaintiff seeks to hold the school district liable for the *absence* of bus service, which by statute was discretionary for after-school activities. Plaintiff has not cited any authorities placing any affirmative duty on the school district to supply this missing bus service.

■■ Having considered the statutory language as well as case law and their applicability to the facts of this case, we must determine that plaintiff's complaint does not provide a basis for a cause of action against the School Board based on "negligence" for failing to provide transportation for after-school activities.

Having determined that the trial court properly dismissed count III of the complaint, we need not address the issue presented by count IV of the complaint which alleges wilful and wanton conduct on the part of the school district.

For the foregoing reasons, the orders of the trial court dismissing counts II, III and IV of plaintiff's complaint are affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.