LAKESIDE CONDOMINIUM "C" ASSOCIATION, Plaintiff-Appellant, v. FREDIANI DEVELOPERS, INC., *et al.*, Defendants (the Village of Mount Prospect, Defendant-Appellee).

First District (4th Division)   No. 84—2173

Opinion filed August 22, 1985.

Stephen M. Waters, of Chicago (Lisa Weinstein, of counsel), for appellant.

Wayne B. Giampietro and Stephen G. Daday, both of DeJong, Poltrock & Giampietro, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Lakeside Condominium "C" Association (hereinafter Lakeside), as representative of condominium unit owners, filed a complaint against a builder-vendor, an architect, a masonry subcontractor and the village of Mount Prospect (hereinafter the village). In the count against the village, Lakeside charged the village with negligent

enforcement of its building code by allowing the plaintiff's four-story condominium building to be constructed with latent defects. The trial court dismissed Lakeside's count against the village on the ground that Lakeside failed to allege a special duty giving rise to a cause of action against the village. Lakeside now appeals.

According to the complaint, on April 28, 1976, the village issued a building permit for the instant building. However, construction on this building began prior to the issuance of the permit. Sometime in May of 1982, Lakeside became aware of structural defects in the building. As a result of these defects, Lakeside alleged that it has constructed temporary supports to prevent the collapse of the east and west walls and in doing so, expended large sums of money. Accordingly, Lakeside filed this action seeking $500,000 in damages.

In the count against the village, Lakeside specifically alleged that the village owed a duty of care to Lakeside to "insure that the builder would adhere to the approved plans, to cure all defects before completing the construction of the building *** to carefully examine the plans for the proposed construction to determine whether such plans provided for structural strength and safety of the building *** and to require that a building permit be issued before construction could begin." It further alleged that various negligent and careless acts by the village relating to the inspection and enforcement of its building code were the direct and proximate cause of the defective construction and that the village knew or should have known of these defects. Finally, Lakeside alleged that by virtue of the purchase of insurance the village had waived all immunities granted to it under section 2—105 of the Local Governmental and Governmental Employees Tort Immunity Act (see Ill. Rev. Stat. 1983, ch. 85, pars. 2—105 and 9—103).

■ The law is clear that there is no common law duty to members of the general public for a municipality's failure to enforce an ordinance. Liability arises only when a special duty is owed to the particular plaintiff different from that owed to the public at large. (*Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, *aff'd in part, rev'd in part* (1985), 105 Ill. 2d 474, 475 N.E.2d 822; *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 369 N.E.2d 917.) A special duty arises when the entity steps out of its governmental function and acts in a private capacity or develops a "relationship" to the plaintiff. *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147.

The rationale for this general-special duty distinction was succinctly stated in a Minnesota Supreme Court case cited in *Ferentchak*. There, the court found that:

" 'Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises.' (*Hoffert v. Owatonna Inn Towne Motel, Inc.* (1972), 293 Minn. 220, 223, 199 N.W.2d 158, 160.)" *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 485.

■ In the instant case, in support of its position that the village owed a special duty to Lakeside, Lakeside cites *Marshall-Putnam Farm Bureau, Inc. v. Shaver* (1973), 12 Ill. App. 3d 402, 299 N.E.2d 10, and *Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525, two cases where the court found that there was a special duty created as a result of violations of city ordinances. Lakeside asserts that the instant case is factually similar to *Marshall-Putnam* and *Powell*.

In *Marshall-Putnam*, the city failed to seek demolition or repair of an abandoned building which collapsed and damaged an adjacent building. The court concluded that the city's actual knowledge of the dangerous condition prior to the collapse together with the plaintiff's request that the city remedy the condition, created a special duty to protect the plaintiff. Lakeside argues that the village's actual knowledge of the violation in the instant case likewise creates a special duty. Further, in *Powell*, a homeowner sued the village and a developer of homes. The plaintiff alleged that the village failed to inspect, allowed the developer to connect a sewer system insufficient to handle the flow of water and failed to properly design and direct the design of construction of the sewer system. The court held that the village's duty was disclosed through its adoption and control over the sewer system.

The court in *Marshall-Putnam* by emphasizing the city's alleged actual knowledge appears to be relying heavily on *dicta* found in *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214. In *Huey*, a black youth was fatally beaten by four white youths in Cicero. The plaintiff, the administrator to the decedent's estate, brought a wrongful death action against the city alleging wanton and wilful

negligence in its protection of its citizens. The complaint alleged that the city knew or would have known of the danger to the decedent had it exercised ordinary care. The complaint was dismissed. The Illinois Supreme Court affirmed the dismissal, finding that the city was not liable for failure to supply general police or fire protection. In *dicta,* the court noted that had the city actually known beforehand of the danger surrounding the decedent then a special duty would have existed. *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 364.

In the instant case, Lakeside merely alleges that the village knew or should have known of the defects in the condominium building. These are clearly allegations of negligence and do not meet the standard for stating a special duty as found in the *dicta* in *Huey.* Moreover, in a later decision, *Devonshire v. R. W. Harper* (1981), 92 Ill. App. 3d 595, 416 N.E.2d 59, a case based on a similar fact pattern as *Marshall-Putnam,* the court there stated:

"We might well question the correctness of the apparent conclusion in *Marshall-Putnam* that the city's actual knowledge of a 'dangerous condition' in a building may create a duty for the city to protect an adjacent owner by filing suit for authority to repair or demolish the dangerous building." (*Devonshire v. R. W. Harper* (1981), 92 Ill. App. 3d 595, 597.)

Therefore, given that the instant case is factually distinguishable from *Marshall-Putnam* and *Huey* and that the soundness of the *Marshall-Putnam* decision has been subsequently questioned, we reject Lakeside's assertion that *Marshall-Putnam* is applicable to the case at bar.

Furthermore, *Powell* is also readily distinguishable on its facts from the instant case. In *Powell,* the village actually designed and directed the design and construction of the sewer system. As the court stated, this activity represents "more than just the village's acquiescence." (*Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410.) Also, the court in *Powell* highlighted the fact that the city had a particular duty with regard to sewer systems. (See *Burford v. Village of La Grange* (1967), 90 Ill. App. 2d 210, 234 N.E.2d 120.) In the case at bar, it is alleged that the village has failed to properly inspect the building. This is not the same active-type of conduct as was evidenced in *Powell.* (See *Konicki v. Village of Hinsdale* (1981), 100 Ill. App. 3d 560, 427 N.E.2d 325.) Nor are we dealing with a sewer system, which apparently creates a different duty from the duty to enforce a building code. Therefore, *Powell* is not applicable to the instant case.

Finally, Lakeside contends that the village has a common law duty to exercise reasonable care when it undertakes affirmative acts. (See *Block v. Neal* (1983), 460 U.S. 289, 75 L. Ed. 2d 67, 103 S. Ct. 1089;

*Adams v. State* (Alas. 1976), 555 P.2d 235.) Lakeside's citation of authority is not binding on this court, especially in light of the fact that under *Ferentchak* Illinois law is clear that a municipality has no common law duty to the general public to enforce its ordinances. Therefore, we reject Lakeside's final argument.

Since this cause was decided on the basis of a failure to establish a common law duty and not on the issue of immunity, the plaintiff's contention that the Local Governmental and Governmental Employees Tort Immunity Act is waived is not in issue. See *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 369 N.E.2d 917.

Accordingly, based on the foregoing we affirm the judgment of the trial court.

Affirmed.

JOHNSON and LINN, JJ., concur.