VITA ARIZZI *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 1—89—0679

Opinion filed June 29, 1990.

Jay E. DeGroot, of Lawrence W. Leck & Associates, Ltd., of Chicago, for appellants.

Kelly R. Walsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs Vita Arizzi (Vita) and Patricia Arizzi (Patricia), her mother, filed a complaint against several defendants, including the City of Chicago (City), alleging that Vita was injured on a defective porch located on privately owned property which the City had previously declared a nuisance. The City invoked governmental immunity. Plaintiffs now appeal from an order of the circuit court dismissing their complaint against the City on the ground that the City had no actionable duty to abate the nuisance.

The issue on appeal is whether Vita, who was injured on private property, and Patricia may maintain a cause of action against the City for failing to abate a nuisance.

On January 21, 1976, the City filed a complaint against the owner of a building located at 1022 West 32nd Street, Chicago, alleging several violations of building safety regulations, including defective porches. As a result, on June 8, 1976, the circuit court issued an order directing the owner to board up and secure his building.

In the morning of September 8, 1976, Vita, who was eight years old at the time, was playing on the porch of the building with some other children, when she fell from the porch, fractured her leg and sustained other permanent injuries. On June 20, 1988, Vita and her mother, Patricia, filed a six-count complaint seeking damages from the beneficial owners of the property, the mortgagee, the resident taxpayers and the City. In count V, directed against the City, plaintiffs alleged that the City had engaged in willful and wanton misconduct and had acted in reckless disregard of Vita's safety by breaching its affirmative duty to verify the owner's compliance with the court's order to render the building safe and secure and, if the owner had not complied, to secure and maintain the premises in a reasonably safe condition. In count VI, Patricia sought to recover damages from the City under the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015), but added no new material allegations.

The City filed a motion to dismiss the two counts against it based on the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 et seq.). The circuit court granted the motion and dismissed plaintiffs' complaint against the City for failure to state a cause of action.

Plaintiffs advance the theory that the City may be held liable in tort for its failure to fulfill a duty imposed upon it by its own laws, arguing that the City of Chicago Municipal Code (Municipal Code) imposes upon the City certain "duties" concerning the maintenance of buildings and other premises:

"[§]39—11. The Commissioner of Inspectional Services *** shall have the power, and it shall be [his] *** duty, to order any building premises closed *** where it [has been] discovered that there is any violation of any of the provisions of this code enumerated in section 39—1 of this chapter which imperils life, safety or health, and to keep same closed, removed, or shut down until such provisions are complied with." Chicago Municipal Code §39—1 (1976).

"[§]90—7. Any building *** perilous to life or property by reason of the construction of such building or structure or by reason of the condition *** is hereby declared to be a nuisance and the division marshal in charge of the Bureau of Fire Prevention is empowered and directed to cause any such nuisance to be abated." Chicago Municipal Code §90—7 (1976).

"[§]99—1. It shall be the duty of the commissioner of buildings to serve notice, in writing, upon the owner *** of any lot, building, or premises in or upon which any nuisance may be found *** requiring him to abate the same in such manner as he shall prescribe, within a reasonable time. ***

It shall be the duty of the commissioner of buildings to proceed at once upon the expiration of the time specified in said notice to cause such nuisance to be abated." Chicago Municipal Code §99—1 (1976).

"[§]99—2. Whenever any nuisance shall be found on any premises within the city, the commissioner of buildings is hereby authorized [in] his discretion to cause the same to be summarily abated in such manner as he may direct." Chicago Municipal Code §99—2 (1976).

"[§]99—4. No building *** shall be made, used, kept, maintained, operated in the city if such use, keeping[,] maintaining, or operating shall be the occasion of any nuisance, or shall be dangerous to life or detrimental to health.

Every building or structure constructed or maintained in violation of the building provisions of this code *** in an unsafe or dangerous condition, or which in any manner endangers the health or safety of any person or persons, is hereby declared to be a public nuisance." Chicago Municipal Code §99—4 (1976).

The foregoing provisions of the Municipal Code appear to impose an affirmative duty on the City to order the owner of any building which either violates the Code or endangers the health and safety of any person to remedy the violation after notice thereof. If the owner fails to do so within a reasonable length of time as specified in the

notice, the City has an affirmative duty to abate the nuisance. A public nuisance includes any building which is either in violation of the building regulations of the Municipal Code or endangers human health or safety. The question arises, therefore, as to whether these statutory duties rise to the level of a duty sufficient to support a cause of action sounding in tort.

Plaintiffs' complaint charged that the City (1) failed to inspect the subject premises to determine whether the owner had complied with the court order to board up and secure the building; (2) failed to inspect the building to determine whether it was a danger to human health and safety; (3) allowed the building to remain in a partially completed state for an unreasonable length of time; (4) failed to discover that no guard was posted on the premises; and (5) failed to "inspect and supervise" the premises. Plaintiffs further alleged that the City breached its duty to abate the nuisance, *i.e.*, to board up and secure the building and to maintain the premises in a reasonably safe condition.

In response, the City's motion to dismiss relied specifically on sections 2—103 and 2—105 of the Tort Immunity Act, which provide as follows:

> "§2—103. A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Ill. Rev. Stat. 1989, ch. 85, par. 2—103.

> "§2—105. A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." Ill. Rev. Stat. 1989, ch. 85, par. 2—105.

■ We must first decide whether the City has a common law duty to protect Vita from injury caused by a dangerous condition existing in violation of the City's ordinances, for if there is no duty, there is no tort and accordingly no basis to invoke immunity from liability. (See *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26; *Lakeside Condominium "C" Association v. Frediani Developers, Inc.* (1985), 135 Ill. App. 3d 972, 482 N.E.2d 665; *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 369 N.E.2d 917.) Municipal ordinances designed to protect the public at large impose no corresponding duty at common law to protect individual members of the public, unless the plaintiff can show that the municipality owes him or her a special duty that is different from its duty to the general public. (*Lakeside,*

135 Ill. App. 3d 972, 482 N.E.2d 665; see generally 38 A.L.R. 4th 1194 (1985).) A special duty can arise in two instances: when the municipality acts in a private instead of a governmental capacity or when it develops a "relationship" with an individual. (*Lakeside*, 135 Ill. App. 3d at 973, 482 N.E.2d at 666.) This special relationship is created when the municipality becomes actually aware of the danger to a particular plaintiff before the injury complained of occurs. (*Lakeside*, 135 Ill. App. 3d 972, 482 N.E.2d 665.) In *Lakeside*, the plaintiff condominium association sued the village of Mount Prospect for its negligent failure to inspect a construction project and otherwise enforce its building code, causing a four-story condominium complex to be built with latent defects. The court found that the plaintiff had failed to properly plead the existence of such a relationship when it alleged merely constructive awareness—that the City "knew or should have known" of the defects causing the alleged injury. *Lakeside*, 135 Ill. App. 3d at 975, 482 N.E.2d at 667.

The provisions of the Municipal Code upon which plaintiffs in this case rely offer protection to the public at large from the dangers of unsafe and inadequately maintained private property; however, as stated in *Lakeside*, building codes, permits and inspections " 'are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes.' " (135 Ill. App. 3d at 974, 482 N.E.2d at 666, quoting *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 485, 475 N.E.2d 822, 827.) Although plaintiffs here alleged that the premises at issue were located in an area populated by families with children and that the City "knew or in the exercise of ordinary care should have known, that the condition of the premises and porch were attractive to children of Plaintiff's age and experience, that children were likely to enter on the premises to play on and around the porch and premises, and that for some time prior to September 8, 1976, children were in the habit of entering the premises and playing on and around the porch and premises," conspicuously missing from the complaint is any recitation of facts which would indicate that the City was actually aware of the danger posed by the defective porch to Vita.

■ In *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214, the victim's family brought a wrongful death action against the town of Cicero for its willful and wanton failure to provide police protection to Jerome Huey, a black minor who was beaten to death by four white youths wielding baseball bats. The court held that the town did not have a common law duty to protect the decedent because, al-

though the complaint alleged that the town knew of the presence of blacks in its territory and of the possibility of racial disorder, it did not allege "that defendants knew of the presence of decedent in the town, that he had requested police protection, or that he was in some peculiar danger." (*Huey*, 41 Ill. 2d at 364, 243 N.E.2d at 216.) Similarly in the present case, although the complaint alleged that the City was aware of the danger posed by the vacant building because it had obtained a court order earlier in the same year to have the building boarded up and secured, it did not allege that the City actually knew of Vita's presence on the premises or that she was in some peculiar danger. Accordingly, the City did not have a special duty toward Vita, and since the complaint failed to allege such a duty it also failed to state a cause of action.

The City properly relies on *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26, which addressed facts very similar to those at bar. The plaintiff there was a one-year-old minor who was poisoned after ingesting chips of paint from the walls of a privately owned apartment. The complaint charged that the proximate cause of the injury was the negligent failure of the City to enforce provisions of its housing code relating to the maintenance of common stairways, exterior halls and living areas. Without reaching the issue of governmental immunity, the supreme court held that the complaint failed to state a cause of action against the City because the purpose of the housing code was to promote the safety and health of the general populace of the City and that its enforcement was a purely governmental, rather than a proprietary or ministerial, act. The court further found that the ordinance did not give rise to a special duty to the plaintiff different from its duty to the public at large. At the root of the duty analysis is a public policy consideration which the court expressed as follows:

> "If the failure of the city to enforce this ordinance should render it liable for injuries sustained thereby, the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutary legislative enactments." (*Stigler*, 48 Ill. 2d at 24-25, 268 N.E.2d at 29.)

The court concluded that in the absence of statutory liability, the proper defendant would be the party who actually violated the ordinance.

*Stigler* controls the disposition of the instant case, for both cases concern a member of the general public who suffered an injury on pri-

vately owned property proximately caused by a condition of the premises constituting a violation of certain provisions of the City's Municipal Code enacted for the safety and welfare of the public at large. Plaintiffs stoutly disagree with this interpretation, however, insisting that a decisive difference exists between *Stigler* and the case at bar: *Stigler* and the cases following it do not apply because *Stigler* concerned the City's *failure to enforce* its ordinance, whereas here the City *violated* its ordinance. Plaintiffs point to no authority drawing a meaningful difference between the terms. The term "fail[ure] to enforce" originates in the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, pars. 2—103, 2—105); "violation" was a term the supreme court used in *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326, wherein it held that the city had an actionable duty to maintain its public streets. Plaintiffs rely almost exclusively on that case in support of their position.

In *First National Bank*, plaintiff, who was injured in an automobile accident, charged that the City of Aurora negligently permitted "a large, dense evergreen tree" with "a line of dense bushes" to remain on municipal property within 20 feet of an intersection, thus creating a dangerous condition by obstructing the view of motorists, in violation of State law and city ordinances regulating public nuisances. (71 Ill. 2d at 5-7, 373 N.E.2d at 1328.) The supreme court held that by "violating" its own ordinances, the city became liable to the injured plaintiff in tort. The court further held that the existence of the city's ordinances imposing a responsibility on the city to remove dangerous obstructions coupled with the fact the city violated those ordinances negated any immunity from liability under the Tort Immunity Act. Finally, the court went on to state that even if the obstruction would have been on private property, the city would have had a duty to remove the vegetation pursuant to an ordinance which provided that if the owner of property containing an obstruction fails to remove it after proper notice, it is the city's *duty* "to summarily remove or take down the [obstruction] or cause the same to be removed or taken down" at the owner's expense. 71 Ill. 2d at 10-11, 373 N.E.2d at 1330, citing Aurora, Ill., Municipal Code, ch. 42, §70.

*First National Bank* is not dispositive of this case for the following reasons. First, the property at issue there was public property, under direct city control. Here, Vita was injured on private property, whose proper maintenance in the first instance was the responsibility of its private owner. (See *Stigler*, 48 Ill. 2d at 25, 268 N.E.2d at 29.) Second, the court's pronouncement with respect to nuisances on private property was not necessary to the disposition of the case. (See *In*

*re Marriage of Drews* (1985), 139 Ill. App. 3d 763, 487 N.E.2d 1005 (defining *obiter dictum*), *aff'd* (1986), 115 Ill. 2d 201, 503 N.E.2d 339, *cert. denied* (1987), 483 U.S. 1001, 97 L. Ed. 2d 729, 107 S. Ct. 3222.) Third, any references to *Stigler* are pointedly absent from the opinion, a strong indication that the court in *First National Bank* was not attempting to overrule *Stigler*'s holding.

■ Finally, it should be noted that plaintiffs' reliance on certain language in *First National Bank* for the purpose of establishing duty is unwarranted. Quoting from *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417-18, 170 N.E.2d 881, 886, *First National Bank* held that " 'the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence, and that the party injured thereby has a cause of action, provided he comes within the purview of the particular ordinance or statute, and the injury has a direct and proximate connection with the violation.' " (*First National Bank*, 71 Ill. 2d at 9, 373 N.E.2d at 1330.) Clearly, when the court stated that the violation of an ordinance is *"prima facie* evidence of negligence" it was referring to the second prong of any tort analysis which asks "whether there was a breach." We do not reach this issue in the present case, which comes to us in the pleadings stage, and the outcome of which thus depends solely on the existence of a duty, a pure question of law. Because plaintiffs' complaint alleged neither a special relationship with the injured child nor municipal ownership of the property upon which the injury took place, we hold that plaintiffs fail to show that the City had a duty based on the Municipal Code giving rise to liability in tort and thus their complaint fails to state a cause of action. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.