Janet MAYER, Administratrix of the Estate of John Russell Kosmos, Deceased, and Robert M. Mayer, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 89 C 3468.

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1991.

Richard A. Kerwin, David H. Lucas, Lucas, Murphy, Kerwin & Coffey, Chicago, Ill., for plaintiffs.

Linda A. Wawzenski, Attorney's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, both motions for summary judgment are denied. Defendant's immunity claim is denied and liability remains an issue for jury determination.

## BACKGROUND

Plaintiffs brought this wrongful death action against the United States under the Federal Tort Claims Act ("FTCA") after their decedent, John R. Kosmos, was killed by Jack E. Dillman, Jr., a Vietnam veteran, within weeks of his release from the Veterans Administration Medical Center in Marion, Indiana.

Defendant claims, as it did in a prior motion to dismiss, that its decision to release Dillman is immune from prosecution because such decisions are covered by the discretionary function exception to the FTCA, 28 U.S.C.A. § 2680(a). Defendant relies upon the factual background outlined in this court's denial of its motion to dismiss in a Memorandum Opinion dated December 1, 1989. These facts also appear in a six-point Statement of Uncontested Facts defendant provided the court pursuant to local Rule 12(1) (see below), and are summarized as follows:

Jack E. Dillman, a Vietnam veteran, suffered psychiatric illness and was repeatedly hospitalized since his discharge from military duty. He was admitted to the Veteran's Administration ("VA") Medical Center in Marion, Indiana six times between 1975 and 1979 and each time he was diagnosed as having paranoid schizophrenia. In December of 1979 he was released from the hospital and lived outside of that facility until he was arrested for auto theft in November of 1984. After three days in jail he was placed into the custody of his father, who then brought commitment proceedings under Indiana law. Dillman was returned to the VA hospital in Marion, Indiana per court order on November 28, 1984.

Two months later, on January 24, 1985, Dillman was again released from the VA hospital as part of its Community Residence program. The VA approved Dillman's plan to rent a room from a Mrs. Donaldson of Marion, Indiana for a two-week trial period. Four days after he was released the VA began receiving complaints from neighbors of Mrs. Donaldson concerning Dillman's annoying and disruptive behavior, his interest in a gun catalogue, and his scribbling of incoherent notes about murderers. Consequently, Dillman was readmitted to the VA hospital.

The VA hospital next, and for the last time, arranged for Dillman to be released on February 26, 1985 into his father's care rather than as part of the special release program. The VA then, however, released Dillman at large with instructions for him to proceed to his father's house. Dillman instead stayed in Marion for three weeks, and did not reach his parent's house in Gary, Indiana until March 18th. His father did not report this to the VA hospital.

On March 25th he left his father's care ostensibly to keep an outpatient appointment. When Dillman failed to show up for his appointment the VA tried to locate him. Two days later, in Oak Lawn, Illinois, Dillman threatened a cashier and three bystanders at a gas station. And on March 29, 1985 Dillman went into Al's Gas Stop also in Oak Lawn asking for cigarettes. Without provocation he pulled out a gun and fired two shots into John Kosmos, the 21–year old attendant. Kosmos died three hours later, as did Dillman the following day when police shot him while resisting arrest at a local motel.

The estate of John Russell Kosmos and his next of kin filed a wrongful death action against the United States under the FTCA, 28 U.S.C. § 1346. Plaintiffs claim that the VA psychiatrists were negligent in

deciding to release Dillman from the VA medical center and in the manner in which that release was effected because they had or should have had notice of his violent and antisocial tendencies.

Defendant United States, moved to dismiss this action on the grounds that it failed to state a claim for relief under Illinois tort law and that, even if a claim were stated, it would be barred by the FTCA. This court agreed with defendant that Illinois substantive law applied, but determined that pursuant to that law and the fact alleged in the complaint, the defendant did owe a duty of care the deceased, John Kosmos. *See Kirk v. Michael Reese Hospital & Medical Center,* 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987); *Estate of Johnson v. Condell Mem. Hosp.,* 119 Ill.2d 496, 117 Ill.Dec. 47, 520 N.E.2d 37 (1988) (both cases implying that under adequately pleaded facts, the Illinois Supreme Court views favorably § 319 of the Restatement (Second) of Torts establishing a duty of care to control third parties where the defendant has physical custody of the third party.) Applying the standards of Rule 12(b)(6), this court further held that the release of a mental patient from the custody of a hospital was better viewed as a purely medical decision of the type not envisioned under the protection of the discretionary function exception to the FTCA.

Defendant has renewed by motion for summary judgment its request to end this suit based on the discretionary function exception, and has provided additional evidence to that effect. Plaintiffs have countered with a cross-motion for summary judgment on the issue of liability, arguing merely that the defendant failed to show any change in fact or law in the new motion. Both motions for summary judgment are denied for reasons discussed below.

## LEGAL STANDARD

Granting summary judgment under Fed. R.Civ.P. 56 is appropriate where the pleadings, affidavits, admissions and other submissions of the parties indicate that there are no genuine issues of material fact barring judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant bears the initial burden of showing that the record contains no issue of material fact when viewed from a perspective giving the opposing party the benefit of all favorable inferences reasonably drawn, *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987), and that the uncontroverted facts do not provide grounds for the jury to find for the nonmovant.

Once the movant has met this burden, Rule 56(e) then imposes on the opposing party the burden of setting forth specific facts which show that a genuine issue for trial does indeed exist. The opposing party must provide the court with evidence sufficient to support, rather than merely assert, the existence of factual issues that preclude judgment as a matter of law. *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 567 (7th Cir.1989). Should the nonmovant fail this burden, the movant is entitled to a grant of its motion for summary judgment.

Local rules for the Northern District of Illinois further require that the party moving pursuant to Rule 56 provide a "statement of material facts as to which the moving party contends that there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Northern District of Illinois General Rule 12(*l*). The statement must contain short, numbered, specifically referenced paragraphs, and the absence of such a statement is grounds for denial of the motion. *Id.*

The local rules for also require that the opposing party's answer to a Rule 56 motion include "a response to each numbered paragraph in the moving party's statement," and a similar statement of "any additional facts which require a denial of summary judgment." Northern District of Illinois General Rule 12(m). All facts set forth in the movant's statement which remain uncontroverted are deemed admitted. *Id.*

■ In the present case, the plaintiffs' answer to the defendant's motion failed to counter each of the defendant's six statement of fact as required by Local Rule 12(m). Accordingly, the factual statements offered by the defendant must be deemed admitted by the plaintiffs.

Plaintiffs, in filing their cross-motion for summary judgment also failed to provide their own statement of material facts pursuant to local Rule 12(*l*). While such a failure provides grounds for denying plaintiffs' cross-motion, this court will forego such a resolution and will consider the merits of the cross-motions.

## DISCUSSION

### A. Defendant's Motion

Under the general waiver of sovereign immunity established by the Federal Torts Claim Act, the United States government can incur liability for tortious conduct "in the same manner and to the same extent as a private person under like circumstances." 28 U.S.C. § 2674. Specifically, 28 U.S.C. § 1346(b) provides that:

"the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

This consent to liability is not, however, without exception. In 28 U.S.C. § 2680(a) Congress allows the federal government immunity from prosecution where its agency or employee exercises or performs, or fails to exercise or perform, "a discretionary function or duty ... whether or not the discretion involved be abused."

The government argues here that it should be granted summary judgment because the conduct of the VA psychiatrist who released Dillman was a permissible exercise of policy judgment, i.e., discretionary within the meaning of 28 U.S.C. § 2680(a). In support of this contention, defendant argues that the two-prong test for applying the discretionary function exception as outlined in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) is satisfied under the facts presented.

■ The first prong states that a discretionary act or omission must logically be one involving an element of choice or judgment. *Id.* 486 U.S. at 535–36, 108 S.Ct. at 1958. The Court in *Berkovitz*, recalling its conclusion in *United States v. Varig*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984), pointed out that the nature of an employee's conduct rather that the employee's status determines whether the discretionary function exception is appropriate. *Berkovitz*, 486 U.S. at 535–36, 108 S.Ct. at 1958. Conduct which merely carries out a specifically prescribed course of action detailed in a statute, regulation or policy involves no exercise of judgment and so is not considered conduct immune from prosecution under the discretionary function exception of the FTCA. *Id.*

But the Court did not construe 28 U.S.C. § 2680(a) as a blanket cover for all discretionary acts, and therefore the second prong of the test requires that the discretionary judgment required by the first prong be of the kind that Congress intended to shield. *Id.* 486 U.S. at 537–38, 108 S.Ct. at 1959. Congress created this exception to prevent the courts from using tort actions to second-guess "legislative and administrative decisions grounded in social, economic, and political policy." *Varig*, 467 U.S. at 814, 104 S.Ct. at 2764–65. In short, the court can grant governmental immunity only if the discretionary act in question was within the scope of the duty of a federal agency or employee and was an exercise of the government's social, economic or political policy.

That the decision to release Dillman from the VA medical center on February 26, 1985 was within the scope of the VA physician's duty and involved judgment and

therefore was technically a discretionary act is evident from the facts. But meeting the second prong of the *Berkovitz* test proves more problematic in this case. Defendant contends that the decision to release Dillman from the VA medical center involved not only professional medical judgment, but also considerations of VA policy as embodied in the both VA's Program Guide for the Management of Suicidal and Violent Patients ("MSVP") and its Inpatient Program Guide for Psychiatry ("IPGP"). Defendant further supports its contention with an affidavit by Dr. William W. Van Stone, Chief of Treatment Services for the Mental Health and Behavioral Sciences Service of the Department of Veteran Affairs. Dr. Van Stone asserts that besides medical judgment, patient release is predicated upon considerations of patients' constitutional rights, the VA's interest in safeguarding both patients and the public, and its policy objective of reintegrating patients into the community as soon as possible. Defendant also points out that any alleged failure by the releasing physician to consider the potential dangers Dillman posed to the public is protected because 28 U.S.C. § 2680(a) extends to failures in exercising or performing discretionary functions or duties.

■ While the court now under Rule 56 considers supporting evidence such as affidavits and documents provided by the defendant, the issue remains essentially the same as it was in the prior motion to dismiss: whether the medical judgment involved in releasing a psychiatric patient from a VA facility is based upon considerations of policy within the meaning of *Berkovitz*. This court concludes that it is not.

In the prior ruling in this case, this court noted the split of authority reigning over whether routine medical judgment such as a psychiatrist's decision to release a patient is discretionary within the meaning of *Berkovitz*. One line of authority regards VA patient release decisions as expressions of public policy and therefore covered by the discretionary function exception. *See Smart v. United States*, 207 F.2d 841 (10th Cir.1953); *but see White v. United States*, 317 F.2d 13, 18 (4th Cir.1963) (*Smart's* authority is "weakened by the Court's statement that the only negligence with which the defendant was charged was the failure fully to inform the patient's father of his true condition). The other side of the split is exemplified by a more recent decision in *Collazo v. United States*, 850 F.2d 1 (1st Cir.1988). The court in that case distinguished between the exercise of governmental discretion and the exercise of professional or occupational discretion, and denied the government recourse to the discretionary function exception. *Collazo*, 850 F.2d at 3 (§ 2680(a) not applicable where nothing in the record suggests that "the VA hospital's decisions were made on other than medical grounds"). *See also Lather v. Beadle County*, 879 F.2d 365, 368 (8th Cir.1989) (physician's negligent evaluation of psychiatric patient's condition held to involve professional rather than governmental discretion); *Rise v. United States*, 630 F.2d 1068, 1972 (5th Cir.1980) (Army physician's act of referral of patient to civilian hospital and abandonment of her care held to be a medical decision involving no policy judgment).

In the absence of 7th Circuit precedent on which line of authority to follow, this court reaffirms its prior conclusion that the reasoning of the *Collazo* court exemplifies the better application of the *Berkovitz* test. Thus, the decision to release a patient will be deemed an inherently medical one unless proven otherwise.

The defendant has again failed to prove otherwise. In an attempt to remedy the evidentiary defect in its motion to dismiss, defendant offers evidence in support of its contention that the decision to release Dillman was based on policy. The affidavit of Dr. Van Stone and the MSVP and IPGP manuals do indeed demonstrate that the VA has an express patient treatment policy. However, the fact that judgment may be exercised within the context of policy guidelines does not necessarily mean that release decisions are anything but medical. The Objectives of Treatment contained in the IPGP, for example, directs medical examiners to "[m]inimize restrictions of veterans' personal liberty by requiring hospi-

talization only when absolutely necessary," and at the same time to "[m]inimize the chances that severely disturbed veterans will injure or kill themselves or others." The existence of guidelines establishing such broad ranging concerns does not inexorably lead to the conclusion that patient release decisions are dictated by policy rather than medical judgment, and the defendant fails to show that on February 16, 1985 the VA physician who released Dillman acted out of the dictates of this policy rather by his own medical judgment.

The scope of the discretionary function exception was never, in any event, meant to be so broad as to cover all decisions made under an umbrella of policy. The Supreme Court in *Berkovitz* rejected the government's contention that "the [discretionary function] exception precludes liability for any and all acts arising out of regulatory programs of federal agencies." *Berkovitz*, 486 U.S. at 536–40, 108 S.Ct. at 1959–60. If all federal employee acts involving some judgment and performed under some policy were to be viewed as discretionary policy-making, then the discretionary function exception would overtake both the rule and the purpose of the FTCA, and the second prong of the *Berkovitz* test would be meaningless. Few employee acts are so strictly controlled by specific policy instructions as to be void of any choice or judgment, while at the same time few employees operate independently of some overall policy structure.

Having again failed the second prong of the *Berkovitz* test, the government is not entitled to sovereign immunity from liability under the discretionary function exception of the FTCA through the vehicle of summary judgment. Accordingly, the merits of the wrongful death claim under state law must be reached.

B.  Plaintiff's Motion

In addition to failing their requirements under local Rule 12(*l*), plaintiffs also failed to adequately support their motion for summary judgment concerning liability. In their cross-motion for summary judgment plaintiffs claim that the government con-

ceded to negligence and therefore only damages remain uncontested. They offer no additional evidentiary support for any finding of negligence on the part of the releasing physician, and merely reassert this court's conclusion in denying defendant's motion to dismiss on the issue of immunity.

This court agrees with defendant that nowhere does a concession to negligence by the government appear in its supporting memorandum and, therefore, that the issue of liability remains in dispute. Accordingly, plaintiffs' cross-motion for summary judgment is also denied.

### CONCLUSION

Both parties' motions for summary judgment are denied. The government is not benefited by immunity from prosecution under the discretionary function exception of the FTCA, and the issue of whether the government acted wrongfully in releasing Dillman is left for resolution at trial.