EDWARD SCULLES, Plaintiff-Appellant, v. AMERICAN ENVIRONMEN-
TAL PRODUCTS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—2980

Opinion filed March 23, 1992.

James Costello, Ltd., of Des Plaines (James P. Costello, of counsel), for appellant.

Hennessy & Cihak, P.C., of Chicago (Jerome E. Cihak, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Edward Sculles, brought suit against four business entities alleging, *inter alia*, negligence and products liability, seeking damages for injuries he received from a workplace accident involving a commercial baler. Plaintiff appeals from the circuit court's grant of summary judgment in favor of one of the defendants, P.T.L. Industries, Inc. (PTL). The court ruled, generally, that PTL had no duty to warn of any hazardous condition with respect to the baler and that plaintiff's injuries were not attributable to PTL's servicing of that equipment. For reasons which follow, we affirm that judgment.

Plaintiff injured his hand in an accident which occurred at a J.C. Penney Company warehouse in Schaumburg, Illinois, on October 10, 1984. At that time, J.C. Penney Company (J.C. Penney), owned and operated the baler for purposes of disposing corrugated cardboard boxes. The boxes are placed in a hopper and compacted by a "ram" into cube-sized packages. The compacted material is emitted from a side opening of the baler. It appears that the side opening is closed during the compacting process by two metal doors, a smaller metal door overlapping the nonhinged edge of the larger metal door.

According to the depositions filed in the circuit court, plaintiff's co-worker, Robert Krotzer, was one of three workers at the plant who was authorized to use the machine, but he had received minimal training in its operation. Two days before the accident, Krotzer informed his supervisor, plant manager Gary Young, that a shut-off switch on the baler was broken. No action was taken by Young to fix the switch nor was any repair sought. On October 10, 1984, Krotzer apparently overfilled the baler and asked plaintiff to help him by holding the large metal door shut while Krotzer turned the machine on. Once the machine was turned on, the smaller door closed on plaintiff's hand. When Krotzer heard plaintiff's screams,

he became disoriented and pressed several buttons on the baler, which, unfortunately, exacerbated the situation. Young, who also heard plaintiff's screams, turned off the electrical power in the plant; however, he turned the power back on when he realized that the baler would not operate without it. Another worker finally released plaintiff's hand from the machine a short while later.

In his suit, plaintiff named, as defendants, the machine's manufacturer, American Environmental Products Inc. as well as J.C. Penney, Barr Electric Corporation (Barr), and PTL. Plaintiff charged Barr and PTL with the negligent failure to properly service, maintain, and repair the baler's electrical system and the failure to service and maintain the baler's start/stop mechanism.

PTL is a general repair service company owned and operated by Jack Essenberg. Essenberg repairs compacters and balers throughout the Chicago area on an "on call" basis. Essenberg has worked on balers and compacters since 1970, but had no prior experience with a baler like the one in question.

Essenberg stated that he was familiar with safety standards set forth by the Occupational Safety and Health Act (OSHA) (29 U.S.C. §651 *et seq.* (1982)) to the extent that he could service a machine to meet OSHA's specifications if a company had been cited for a violation. Essenberg offered safety advice in the past to various compacter owners if "a machine naturally needs repair so that it comes in with soliciting service work. Or if I see that a machine is unsafe according to what I understand OSHA specification, then I'll notify the customer."

Essenberg's first service call to the J.C. Penney warehouse was in July 1984, when he was asked to check a wiring problem. His second visit concerned the baler's conveyor belt. In each case, Essenberg repaired the defects and was not asked to perform any further services nor was he advised of a defective start/stop switch. No one asked Essenberg to look for safety hazards on the baler, and no one asked him for suggestions relative to warning signs or safety features on the machine. Moreover, he offered no such suggestions or advice. Essenberg was asked about safety by J.C. Penney only after the accident had occurred. One day after plaintiff's accident, Essenberg returned to the warehouse, where he was asked by J.C. Penney to make the baler "safer." Although Essenberg found that the door was functioning properly, he suggested a different type of stop switch, which he installed. Essenberg also

stated that he would "eyeball" the machines for safety problems and would inform the owners of "abnormal" safety defects.[1]

PTL's summary judgment motion argued that plaintiff's complaint did not allege that PTL had a duty to warn of a hazardous condition or of a breach of an alleged duty to warn. PTL contended that plaintiff's complaint made no reference to any failure to warn as being the predicate of liability against PTL. In ruling for PTL, the trial judge concluded that, although Essenberg conceded that he would "eyeball" the equipment, notifying J.C. Penney of any discovered dangerous condition, Essenberg had no duty to do so since he operated without a contract and only repaired the equipment on a "case by case" basis. Moreover, no contrary evidence existed to show that Essenberg was ever asked to make safety suggestions, and no connection between Essenberg's work and the accident was ever shown by plaintiff.

Plaintiff initially argues that the trial judge failed to apply the correct law in deciding whether defendant had a duty to warn of the baler's dangerous condition.

■ Our supreme court has stated that, in a negligence action, "the duty to warn co-exists with the corresponding liability for the hazard if no warning is given. If the defendant is not liable for the existence of the hazard in the first instance, he is under no duty to warn of it." (*Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 574, 372 N.E.2d 822, citing *Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 273 N.E.2d 699. See also *Branson v. R. & L. Investment, Inc.* (1990), 196 Ill. App. 3d 1088, 1093, 554 N.E.2d 624.) Plaintiff argues that this court's decision in *Weber v. Chen Enterprises, Inc.* (1989), 184 Ill. App. 3d 847, 540 N.E.2d 957, *appeal denied sub nom. Gribbon v. Chen Enterprises* (1989), 127 Ill. 2d 643, 545 N.E.2d 110, changed the law in Illinois on this point. Plaintiff's argument is meritless because the supreme court has not overruled *Lansing* and because the appellate court in *Weber* distinguished its decision from *Newcomm* based upon the facts of the case before it. See *Weber*, 184 Ill. App. 3d at 849.

■ Defendant here did not have a duty to warn of any potential hazards regarding the baler. The uncontroverted evidence indicates

---

[1]J.C. Penney was later fined for maintaining the baler in an unsafe manner by OSHA because no barrier guards or electronic safety devices were present to prevent employees from being injured by the operation of the small metal door in circumstances similar to those at issue here. Following the accident, J.C. Penney also put a warning sign on the baler, cautioning employees to "not put hands on this side of tape ever."

that Essenberg was not under a contractual obligation to provide J.C. Penney with safety information nor was he ever otherwise asked for safety suggestions. The record reveals that Essenberg serviced the machine two times before the accident for problems unrelated to plaintiff's accident. Since Essenberg was not responsible for the existence of the hazard, he did not have a duty to warn of it.

Plaintiff also asserts that defendant had a duty to warn of the hazardous condition when he voluntarily "eyeballed" the J.C. Penney baler for safety defects.

■ It has long been recognized that one who assumes to act, even though voluntarily or gratuitously, may thereby become subject to the duty of acting carefully. (*Mattice v. Goodman* (1988), 173 Ill. App. 3d 236, 239, 527 N.E.2d 469; *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1005-06, 365 N.E.2d 80.) Liability will attach if the improperly performed voluntary act causes the condition that yields the injury. *Mattice*, 173 Ill. App. 3d at 236.

■ The record here establishes that plaintiff charged defendant with negligence in maintaining the electrical system of the baler and the on/off switch. However, no evidence indicates that either of these systems caused the accident in which plaintiff was injured. Essenberg was not asked to give safety suggestions at either of his service visits before the accident occurred. Plaintiff seemingly maintains that by not warning J.C. Penney of the failure to exhibit a warning sign on the machine, Essenberg negligently performed his voluntary act of "eyeballing" the machine for safety problems. This argument is without merit. Defendant's failure to warn of the lack of a safety sign could not have caused the injury alleged by plaintiff's complaint, which charged that the injury arose from defendant's negligent maintenance of the baler's electric system and on/off switch.

Finally, plaintiff contends that the trial judge erred by granting summary judgment to defendant.

■ Section 2—1005 of the Code of Civil Procedure provides that summary judgment may be entered only if "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Accordingly, the purpose of summary judgment is not to try a question of fact, but to determine whether one exists. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552.) A motion for summary judgment is to be granted if the pleadings, depositions, affidavits, and admissions filed reveal that no genuine issue as to any

material fact exists. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) Furthermore, the pleadings, affidavits, and depositions must be construed against the movant in favor of the opponent. *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177, 483 N.E.2d 210, *cert. denied* (1986), 475 U.S. 1016, 89 L. Ed. 2d 313, 106 S. Ct. 1199.

Here, all the facts demonstrate that defendant did not have a duty to warn J.C. Penney of the existence of hazard on the baler at issue. Accordingly, no question of fact exists to preclude entry of summary judgment.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.