Rose BERGQUIST, Personal Representative of the Estate of Henry Bergquist, et al., Plaintiffs,

v.

UNITED STATES of America, NATIONAL WEATHER SERVICE, Defendant.

Richard R. HOFFMAN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Edward Francis JONES, Plaintiff,

v.

UNITED STATES of America, Defendant.

Justina HERROD, Special Administrator of the Estate of Leticia Herrod, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Justina HERROD, Special Administrator of the Estate of Titania Herrod, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Adele HUNT, Special Administrator of the Estate of Stephen Patrick Hunt, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 93 C 5239, 93 C 5201 to 93 C 5205.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 28, 1994.

Cris M. Selfridge, Selfridge & Selfridge, Ltd., Hinsdale, IL, for plaintiffs Richard E. Butler, James E. Egizio nfr Angelo Egizio, Rose Bergquist est Henry Bergquist, Ginger Combs est Patricia S. Combs, Angelo C. Egizio est Leslie A. Egizio, Angelo C. Egizio est Thomas J. Egizio, Angelo C. Egizio est Vicki Egizio, Ramon A. Sanchez est Gloria A. Sanchez, Jane A. Sanchez est Gloria A. Sanchez, Larry L. Granat est Janis Beth Granat, Nancy A. Hawes est Howard L. Hawes, Eddie J. Lee, Sr., est Eddie J. Lee, Jr., Paul Strohm est Brian Paul Strohm, Judith Defranco est Eric Wilson, Harold A. Skoien est Patricia A. Skoien.

Thomas P. Walsh, U.S. Attys. Office, Chicago, IL, Heidi E. Weckwert, U.S. Dept. of

Justice, Civ. Div., Washington, DC, for defendant U.S. Nat. Weather Service.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND [1]

This action arises out of a tornado which struck portions of Kendall County and Will County, Illinois from approximately 3:00 to 3:45 p.m. on August 28, 1990 ("the August 1990 tornado"). As alleged in the complaint, the tornado had a devastating impact, allegedly causing 29 deaths, numerous personal injuries, and property damage in excess of $160 million dollars.

Six separate complaints were filed under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA") against Defendant United States of America each seeking recovery for damages and losses allegedly caused by the August 1990 tornado. Each complaint alleges that the National Weather Service ("NWS"), a federal agency of the defendant, was negligent in its forecasting and in its issuance of warnings regarding the August 1990 tornado. The allegations of the complaints implicate five NWS offices [2], which were allegedly involved in "various aspects of the severe weather watch, warning and radar surveillance programs for the storm area on August 28, 1990." (Compl. ¶ 7).[3]

The plaintiffs generally aver [4] that the defendant's agents and employees failed to "adequately interpret ... radar signatures and to convey important information between the Defendant's offices," and that the defendant's agents and employees "failed to issue timely and adequate tornado warnings to local law enforcement and emergency services personnel, which resulted in the failure of local officials to activate the formal warning sirens in Plainfield and Crest Hill, Illinois on August 28, 1990." (Compl. ¶ 34). The plaintiffs claim that as a result of the alleged negligent acts and omissions of the NWS' agents and employees, the defendant breached its duty to use due care in gathering, forecasting and making available for broadcasting up-to-date weather information.

Pursuant to a court order dated October 27, 1993 the six lawsuits were consolidated on the grounds of relatedness, for pretrial purposes only, as to common legal and factual issues. Subsequently, the defendant moved to dismiss the complaints on the following three grounds: (1) Plaintiffs' action is barred under 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA's limited waiver of sovereign immunity; (2) Plaintiffs' action is barred under 28 U.S.C. § 2680(h), the FTCA's misrepresentation exception; and (3) Plaintiffs' action should be dismissed

---

1. For the purposes of this motion to dismiss, all well-pleaded facts and allegations in the plaintiff's complaint will be taken as true. *See Ed Miniat, Inc. v. Globe Life Ins. Group Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). We are not required, however, to accept any legal conclusions that are alleged in the complaint, or that may be drawn from the pleaded facts. *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978); *Frederiksen v. Poloway,* 637 F.2d 1147, 1150 n. 1 (7th Cir.1981), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981).

2. The five offices which were allegedly involved in the negligent forecasting of the August 1990 tornado are: (1) The National Severe Storms Forecast Center, Kansas City, Missouri; (2) the Weather Service Forecast Office, Chicago, Illi-

nois; (3) the Weather Service Office, Rockford, Illinois; (4) the Weather Service Meteorological Observatory, Marseilles, Illinois; and (5) the Center Weather Service Unit, Aurora, Illinois.

3. Since the filing of this motion, the plaintiffs have filed amended complaints for the purpose of bringing the allegations of their respective complaints in substantial conformity with the allegations filed in *Bergquist, et al. v. U.S.,* Case No. 93C5239. Thus, for the purposes of this Memorandum Opinion we will be referring solely to the complaint filed in *Bergquist* when discussing the particularized allegations. Citations to the *Bergquist* complaint will be designated as "(Compl. ¶ __)".

4. The plaintiffs make fifteen specific allegations regarding the alleged negligent conduct of NWS employees.

because the law of Illinois does not impose liability under these circumstances.

On January 20, 1994 the plaintiffs in the above-captioned matters filed, with leave of this Court, amended complaints for the purpose of bringing the original complaints into substantial conformity with one another. The plaintiffs' amended allegations, however, have no bearing upon the posture of the defendant's motion to dismiss, for the legal theories alleged in the original complaint remain intact. The amended complaints are identical[5] to the allegations contained in the complaint filed in *Bergquist, et al. v. United States*, Case No. 93C5239, in all respects relevant to the present motion to dismiss. Accordingly, we will confine our discussion of the present motion to the exhibits and memoranda filed in *Bergquist*, Case No. 93C5239.

Plaintiffs, in a consolidated response to the defendant's motion to dismiss ("Response Memorandum"), contest the defendant's motion maintaining: (1) that the NWS rules, regulations and directives set forth certain requirements and standards that elevated the actions and duties of the NWS meteorologists to that of "operational tasks" that fall beyond the scope of the discretionary function exception to the FTCA; (2) that the nature of the warnings issued by the NWS on August 28, 1990 are not "misrepresentations" within the meaning of the misrepresentation exception to the FTCA; and (3) that the law of Illinois recognizes a cause of action and imposes liability under the circumstances in the case at bar.

Before we begin our analysis of the defendant's motion, we first address the appropriate standard by which to judge a 12(b)(6) motion to dismiss.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon

which relief may be granted since, in ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Ed Miniat, Inc. v. Globe Life Ins. Group Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Doe on Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir.1986). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). We turn to the motion before us with these principles in mind.

## DISCUSSION

### A. Whether the plaintiffs' cause of action falls under the FTCA

The FTCA waives the sovereign immunity of the United States for certain torts committed by its employees. The FTCA authorizes suits against the United States for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The government's waiver of sovereign immunity under the FTCA, however, is limited by several statuto-

---

**5.** Each complaint, of course, contains certain factual allegations unique to each individual plaintiff. These factual discrepancies, however, have no bearing upon the present motion to

dismiss, which is dispositive solely on the common legal theories of recovery asserted in the amended complaints.

ry exceptions, two of which are in issue in the motion presently before us. The two exceptions relevant to the present motion before us are the "discretionary function" exception, 28 U.S.C. § 2680(a), and the "misrepresentation" exception, 28 U.S.C. § 2680(h).

## 1. The Discretionary Function exception to the FTCA

The defendant maintains that this court lacks subject matter jurisdiction because the plaintiffs claims are barred by the discretionary function exception to the FTCA. Under the discretionary function exception, no liability shall lie for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■ The United States Supreme Court has established a two prong analysis in determining the circumstances under which government employee action is protected by the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the action must involve an element of "judgment or choice." *Id.* at 536, 108 S.Ct. at 1959. The exception does not apply "when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow" since under these circumstances, an employee has no rightful option but to follow the directive. *Id.* Second, if the challenged conduct involves an element of judgment or choice, it must be decided whether the judgment was of the kind that the discretionary function exception was designed to shield. *Id.* The Supreme Court has observed that "the basis for the discretionary function exception was Congress' desire to 'prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medi-

um of an action in tort'." *Id.* at 536–37, 108 S.Ct. at 1959 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)).

The plaintiffs maintain that the NWS' allegedly negligent acts and omissions regarding the August 1990 tornado are not protected by the discretionary function exception because the conduct complained of did not involve decisions grounded in policy. Rather, the allegedly negligent conduct devolved from "operational tasks" required of the NWS in fulfilling its statutory mandate to forecast the weather and issue warnings. In other words, the plaintiffs contend that the acts an omissions complained of occurred in the time period between the planning of the NWS' functions and its production. According to the plaintiffs, these operational tasks can not possibly be "grounded in social, economic [and/or] political policy" and therefore, they are beyond the scope of the discretionary function exception. *See Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.

The plaintiffs, however, disregard the U.S. Supreme Court's recent decision in *U.S. v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), in which the Court rejected the argument that there is a dichotomy between discretionary functions and operational activities:

> In light of our cases and their interpretation of § 2680(a), it is clear that the Court of Appeals erred in holding that the exception does not reach decisions made at the operational or management level.... A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly require judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*Id.* at 325, 111 S.Ct. at 1275. *Gaubert* involved an action filed against the United States by a shareholder of an insolvent savings and loan association. There, the plaintiff alleged, among other things, that federal regulators were negligent in their day-to-day

involvement in the association's operations. *Id.* at 319–20, 111 S.Ct. at 1272. Although the facts in *Gaubert* markedly differ from the facts in the present case, the Court's reasoning is even more applicable in the area of weather forecasting, which by its very nature requires the constant exercise of "judgment as to which of a range of permissible courses is the wisest." *Id.* at 325, 111 S.Ct. at 1275.

In fact, as the defendant points out, courts from various circuits have recognized the discretionary nature of the NWS' function, consistently dismissing lawsuits predicated upon the NWS' failure to provide adequate or timely warnings of impending severe weather events. *See e.g. Brown v. U.S.*, 790 F.2d 199 (1st Cir.1986), *cert. denied* 479 U.S. 1058, 107 S.Ct. 938, 93 L.Ed.2d 989 (1987); *Spencer v. New Orleans Levee Bd.*, 737 F.2d 435 (5th Cir.1984); *National Mfg. Co. v. U.S.*, 210 F.2d 263 (8th Cir.1954), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954); *Williams v. U.S.*, 504 F.Supp. 746 (E.D.Mo.1980); *Bartie v. U.S.*, 216 F.Supp. 10 (W.D.La.1963), *aff'd* 326 F.2d 754 (5th Cir.1964), *cert. denied*, 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed.2d 55 (1964); *Mid–Central Fish Co. v. U.S.*, 112 F.Supp. 792 (W.D.Mo. 1953), *aff'd sub. nom.*, *National Mfg. Co. v. U.S.*, 210 F.2d 263 (8th Cir.1954), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954).

The First Circuit's decision in *Brown v. U.S.* is particularly instructive, for there the court was confronted with allegations very similar to the ones asserted in the present case. In *Brown*, personal representatives of the estates of three fishermen filed an action against the United States alleging negligence on the part of its agencies in failing to adequately forecast and broadcast severe weather warnings. The plaintiffs' claims were based on the government's failure to either repair or replace malfunctioning weather-reporting equipment. *Id.* at 200. The First Circuit reversed the district court's finding that the government was negligent in failing to timely predict the true path and intensity of a storm which resulted in the fishermen's deaths, ruling that the defendant's acts and omissions were protected by the discretionary function exception to the FTCA. *Id.* at 203. The court in *Brown* discussed at great length the discretionary function exception to the FTCA remarking that "[w]ithout question, a weather service constitutes [a discretionary function] and a right to expect complete care would make the discretionary exception self-destructive." *Id.*

The Fifth Circuit has similarly concluded that the NWS' actions are immune from common-law tort liability for an alleged failure to accurately predict the weather, since the NWS functions are "clearly discretionary" in nature. *Spencer*, 737 F.2d at 437. In *Spencer*, the plaintiffs alleged, inter alia, that a NWS supervisor failed to properly supervise his employees, failed to adequately monitor flood conditions and failed to provide sufficient warnings of an impending flood. *Id.* The court held that these alleged acts and omissions were discretionary functions that fell within the scope of the supervisor's authority. *Id.*

In their Response Memorandum, the plaintiffs maintain that all six of the NWS cases upon which the defendant relies were decided prior to the U.S. Supreme Court's decision in *Berkovitz*, and that as a result, these cases did not consider the second prong of the *Berkovitz* test in their analysis. Accordingly, the plaintiffs maintain that these cases are not controlling since the courts did not consider whether the "judgment" in issue was of the kind that the discretionary function exception was designed to shield. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958. The plaintiffs urge us to consider the nature of the underlying judgments exercised by the NWS meteorologists to determine whether these judgments were based upon "non-policy" criteria such as professional or occupational judgment.

■ Here, the plaintiffs are attempting to draw a distinction between "operational level tasks" and planning functions. The U.S. Supreme Court, however, has specifically rejected the argument that the discretionary function exception refers exclusively to policymaking or planning functions. *Gaubert*, 499 U.S. at 326, 111 S.Ct. at 1275. In finding that the discretionary function exception reaches decisions made at the operational level, the court observed:

[w]hen established governmental policy, as expressed or implied by statute regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible policy analysis.

*Id.* at 324–25, 111 S.Ct. at 1274–75. We find that all of the plaintiffs' negligence allegations clearly fall within the discretionary function exception because the nature of the acts and omissions complained of are susceptible to any one of the three policy analyses set forth by the defendant. As identified by the defendant, the three policy factors which are implicated in NWS' functions are: (1) cost/budgetary policy considerations; (2) the general "don't overwarn" policy; and (3) the policy of vesting discretion in the forecaster.

■ First, courts have consistently recognized economic considerations as valid and significant considerations in the NWS' forecasting and warning services. *See Brown,* 790 F.2d at 202 ("[H]ow much money [the defendant] is to spend, measured, necessarily, by Congressional appropriations, must be for the government's uncontrolled discretion."). In fact, Congress has specifically provided that economic and budgetary concerns are to be balanced against the NWS' mandate of forecasting weather and issuing storm warnings. *See* 15 U.S.C. § 315 ("The Secretary of Commerce is authorized to make such changes or assignment to duty in the personnel or detailed force of the National Weather Service for limiting or reducing expenses as he may deem necessary."). A significant number of the plaintiffs' fifteen allegations are rooted in the NWS' allegedly inadequate technologies, staffing levels and training. These alleged inadequacies, therefore, are reasonably susceptible to a policy analysis.

■ Second, the defendants have identified a NWS policy to avoid the "cry wolf syndrome," that is, a policy to strive for the highest rate of severe weather detection while maintaining "the lowest possible false alarm rate in the issuance of warnings." *See* WSOM Ch. C–40 ¶ 5.3. The social considerations underpinning this NWS policy are obvious, for it requires the NWS to balance greater safety with greater effectiveness. *See Boyle v. United Technologies Corp.,* 487 U.S. 500, 511, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442 (1988) (Recognizing that a protected discretionary function includes "judgment as to the balancing of many technical ... and even social considerations, including specifically the trade-off between greater safety and greater ... effectiveness."). In their Response Memorandum the plaintiffs argue that the NWS offices are allowed to disregard their "don't overwarn" policy when, in their judgment, the NWS employees believe some type of warning is needed. This argument, however, only reinforces the defendant's position that the decision-making process is one involving the exercise of judgment and a balancing of countervailing policy goals—accuracy of weather forecasting and warning on the one hand, counterbalanced against greater effectiveness on the other.

■ Finally, the third policy consideration implicated in the NWS' function of forecasting and issuing severe weather warnings is the vesting of discretion in the NWS. The NWS' statutory mandate provides, in relevant part, that:

[t]he Secretary of Commerce shall have charge of the forecasting of weather, the issue of storm warnings, ... and the taking of such meteorological observations as may be necessary to establish and record the climatic conditions of the United States, or as are essential for the proper execution of the foregoing duties.

15 U.S.C. § 312. The "foregoing" duties referred to above are the NWS' statutory goals of providing weather services to a variety of national interests, including agriculture, commerce and navigation. *Id.*

The plaintiffs maintain that under the NWS manuals promulgated to help effectuate the NWS' statutory mandate, the NWS employees' discretion in forecasting and issuing weather warnings is limited. The plaintiffs cite to a plethora of provisions in various NWS manuals which provide guidelines which the NWS employees are to follow when encountered with severe weather situations. However, as the defendant points out, the manuals cited by the plaintiffs specifically mandate the issuance of a tornado warning in only *one* circumstance, a circumstance which the plaintiffs do not allege was detected the day of the August 1990 tornado. Thus, no internal procedures requiring a tornado warning were either triggered or violated on the day the tornado struck.

Moreover, we note that all of the NWS manual provisions which the plaintiffs cite are merely guidelines which provide criteria to help NWS employees in determining when a warning may be warranted. We fail to be persuaded that the NWS manuals limit the NWS employees' discretion. To accept the plaintiffs' argument would have unbridled ramifications, reducing the task of the NWS to a "forecasting by numbers" so to speak. The very nature of weather services, however, is such that such a stringent litmus test in forecasting would be impracticable. As the First Circuit observed in *Brown:*

> ... the Weather Service is a particularly unfortunate area in which to establish a duty of judicially reviewable due care. A weather forecast is a classic example of a prediction of indeterminate reliability, and a place peculiarly open to debatable decisions, including the desirable degree of investment of government funds and other resources. Weather predictions fail on frequent occasions. If in only a small proportion parties suffering in consequence succeed in ... persuad[ing] a judge ... that the government should have done better, the burden on the fisc would be both unlimited and intolerable.

*Brown,* 790 F.2d at 204.

■ Under the circumstances in the present case, we refuse to "second guess" the judgment of the NWS, a federal agency, in its exercise of its statutory mandate. *See* *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765. To do so would disregard years of precedent, as well as Congress' intent to minimize "judicial intervention in policymaking that the discretionary function exception was designed to prevent." *Id.* The plaintiffs ask us to take a course of action that would have unbridled ramifications, ones that we are not inclined to impose upon the federal government in the area of weather forecasting.

The plaintiffs cite *Indian Towing v. U.S.,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), for the proposition that the discretionary function exception does not preclude a negligence cause of action against the NWS. There, however, the government did not attempt to invoke the benefit of the discretionary function exception to the FTCA. Instead, the government argued that the FTCA does not impose liability for the negligent exercise of "uniquely governmental functions." *Id.* at 64, 76 S.Ct. at 124. Although the court found the government liable under the FTCA for negligently failing to maintain a lighthouse, the government's liability was not predicated on a theory that the negligence occurred at the "operational level." Rather, liability was imposed because making sure the light was operational "did not involve any permissible exercise of policy judgment." *Berkovitz,* 486 U.S. at 538 n. 3, 108 S.Ct. at 1959 n. 3 (citing *Indian Towing,* 350 U.S. at 69, 76 S.Ct. at 127).

Similarly, plaintiffs' reference to *Mayer v. U.S.,* 774 F.Supp. 1114 (N.D.Ill.1991) is unavailing. Our analysis as set forth above is not contradicted by our holding in *Mayer* in which we held that a government employee's medical judgment in releasing a psychiatric patient from a Veteran's Administration facility did not fall within the discretionary function exception of the FTCA. *Id.* at 1118. In *Mayer,* which was decided before the U.S. Supreme Court rendered its decision in *U.S. v. Gaubert,* we denied the government's motion for summary judgment, finding that it had failed to establish that the medical judgment involved was based on policy considerations within the meaning of the second prong of the *Berkovitz* test. *Id.* We remarked that "the decision to release a pa-

tient will be deemed an inherently medical one unless proven otherwise." *Id.* at 1118. In the present case, however, we are confronted with the service of forecasting and issuing severe weather warnings, a function clearly distinct from medical judgments, and clearly within the discretionary function exception.

Thus, consistent with our discussion above, we find that the NWS' allegedly negligent acts and omissions are "susceptible to a policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275. The NWS employees' day-to-day operational tasks complained of involved the exercise of discretion in furtherance of public policy goals, and were therefore within the FTCA's discretionary function exception. Accordingly, we find that the defendant's alleged acts and omissions, as generally averred, are immune from judicial "second-guessing." Specifically, plaintiff's allegations challenging the NWS' failure "to detect, or to recognize, certain radar signatures" allegedly indicating severe tornadic activity (Compl. ¶ 33(a)); the NWS' failure to "adequately train and drill" its radar operators and staff (Compl. ¶ 33(b)), and to maintain and train its "severe storm spotter group" (Compl. ¶ 33(n)); the failure of the NWS offices to adequately communicate with each other (Compl. ¶¶ 33(c), (d), & (1)) and discuss weather developments (Compl. ¶¶ 33(f), & (g)); the failure of the NWS offices to maintain, use and properly position certain equipment (Compl. ¶¶ 33(c), (e) & (h)) and to install and follow certain upgrades and procedures (Compl. ¶¶ 33(i) & (j)); the NWS' failure to adequately staff and properly supervise its offices (Compl. ¶ 33(j)); and the NWS' negligent failure to timely relay certain information (Compl. ¶¶ 33(m) & (o)) cannot withstand defendant's motion to dismiss under the discretionary function exception to the FTCA.

## 2. The misrepresentation exception to the FTCA

■ The defendant further maintains that the plaintiffs' claims are barred by the so-called "misrepresentation exception" to the FTCA, 28 U.S.C. § 2680(h), which excludes "[a]ny claim arising out of ... misrepresentation." We agree that 28 U.S.C. § 2680(h) poses a jurisdictional bar to the plaintiffs general averments regarding the government's alleged misrepresentations and omissions in its August 1990 warnings of storm activity (¶ 34), as well as plaintiffs' specific allegations regarding the defendants' dissemination of allegedly "inaccurate or potentially confusing information" (¶ 35(k)), and incomplete reports (¶ 35(m) & (o)).

■ The U.S. Supreme Court has held that courts are deprived of jurisdiction over any tort claim based upon the government's alleged failure to communicate correct information. *U.S. v. Neustadt,* 366 U.S. 696, 705–706, 81 S.Ct. 1294, 1299–1300, 6 L.Ed.2d 614 (1961); *Block v. Neal,* 460 U.S. 289, 297, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983). The exception applies regardless of whether the government's alleged misrepresentations are negligent or deliberate. *Neustadt,* 366 U.S. at 702, 81 S.Ct. at 1298.

Recognizing the limitations imposed by § 2680(h), the plaintiffs claim that their cause of action is not barred by the scope of misrepresentation exception under the holding of *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). In *Block* the Supreme Court recognized that the misrepresentation exception to the FTCA does not bar negligence actions which are based not on the government's failure to exercise care in the communication of information, but rather, on the government's breach of a different duty. *Id.* at 297, 103 S.Ct. at 1094. Accordingly, the plaintiffs argue that since the acts complained of "focus upon the negligent performance of operational tasks and duties by the Government, as opposed to the negligent communication of information, the [misrepresentation] exception cannot be applied."

The distinction that the plaintiffs purport to draw is specious, however, for the gravamen of the plaintiffs' allegations make it clear that the government's alleged misrepresentations and omissions in its weather warnings are essential to the plaintiffs negligence claim. In *Neustadt,* the Supreme Court indicated that courts must "look beyond" the literal meaning of the language of the complaint to ascertain the real cause of action asserted. 366 U.S. at 703, 81 S.Ct. at

1298–99. Here, although the complaint is couched in terms of the NWS' alleged breach of statutory duty to forecast and warn the public of severe weather developments, the plaintiffs' claims are not severable from their allegations that the government failed to use due care in issuing accurate and timely weather warnings and that the plaintiffs relied upon these alleged negligent representations to their detriment. Moreover, the plaintiffs have failed to allege an injury independent from their reliance on the government's alleged misrepresentations. *See Block v. Neal,* 460 U.S. 289, 297–98, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983); *Schneider v. USA,* 936 F.2d 956 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); *Deloria v. Veterans Admin.,* 927 F.2d 1009 (7th Cir.1991). Accordingly, the plaintiffs' allegations that the government breached its duty to issue accurate and timely weather warnings is inseparable from the plaintiffs' negligence claims and, therefore, these claims are also barred by the misrepresentation exception to the FTCA.

The Eighth Circuit's decision in *National Manufacturing Co. v. U.S.,* 210 F.2d 263 (8th Cir.1954) is instructive. In that case, a suit was filed against the government for disseminating erroneous weather and flood information. The Eighth Circuit dismissed the plaintiffs' claims finding that they fell within the misrepresentation exception of § 2680(h) of the FTCA:

> Insofar as the instant claims are based on negligence in failing to inform or warn the plaintiffs that the flood was coming, we think that conduct also is within the exception of section 2680(h). That charge is in substance that the duty rested upon the employees to state or represent the imminence of the flood and that the negligent failure to make any statement had the same effect upon the plaintiffs as the alleged misinformation negligently given. The purpose of excepting federal liability on account of negligent misrepresentation necessarily extends to negligent failure to represent which has the same effect as an affirmative misrepresentation.

*Id.* at 276. The Court further observed that allowing the plaintiffs to proceed on their charge would directly controvert the intent of § 2680(h) of the FTCA, which is to "except from the [FTCA] cases where mere 'talk' or failure to 'talk' on the part of a government employee is asserted as the proximate cause of damage sought to be recovered from the United States" *Id.*

 In an attempt to avert dismissal of their actions, the plaintiffs draw the distinction between commercial injuries and a non-commercial injuries, maintaining that the misrepresentation exception to the FTCA only protects the government from economic losses resulting from commercial decisions. The Seventh Circuit, however, has affirmed the dismissal of a complaint seeking recovery for personal injuries against the United States under the misrepresentation exception to the FTCA. *Schneider v. USA,* 936 F.2d 956 (7th Cir.1991). In fact, the misrepresentation exception has been expressly extended to encompass claims filed against the government for personal injuries sustained due to the government's allegedly negligent dissemination of weather service information. *Bartie,* 216 F.Supp. at 21 (holding that a wrongful death claim against the NWS which is "pegged on negligent misrepresentation" is not actionable under 28 U.S.C. § 2680(h)).

Accordingly, plaintiffs general and specific averments regarding the NWS' allegedly inaccurate and incomplete weather bulletins are dismissed because of the applicability of the misrepresentation exception of the FTCA, 28 U.S.C. § 2680(h).

**B. Whether the law of Illinois imposes liability under the circumstances alleged**

Although the foregoing discussion is dispositive of the plaintiffs' claims, we note that the defendant has raised a valid alternative ground for dismissing the plaintiffs' complaints. The government contends that the plaintiffs are precluded from maintaining this action because under the law of Illinois, liability could not be imposed upon the United States under the circumstances alleged.

Under the FTCA, the federal government's waiver of sovereign immunity extends only to those torts committed "under circumstances where the United States, if a private

person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b). Thus, for liability to arise under the FTCA, the plaintiff's cause of action must be "comparable" to a "cause of action against a private citizen" recognized in the jurisdiction where the tort occurred, and the allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action. *Chen v. United States,* 854 F.2d 622, 626 (2nd Cir.1988). Simply alleging violations of the Federal Constitution, federal statutes or federal regulations does not satisfy the FTCA's "law of the place" requirement. *Id.*

In their Reply Memorandum, the plaintiffs assert three separate basis in an attempt to demonstrate that the defendant has incurred comparable liability under Illinois law. First, the plaintiffs claim that the "National Weather Service [NWS] violated its statutory duty to issue serve storm warning." The statutory duty which the plaintiffs seem to be alluding to is federal statute 15 U.S.C. § 313. The negligent performance of duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but only if there are analogous duties under local tort law. *Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157 (D.C.Cir.1985). Thus, for the plaintiffs' action to be cognizable under the FTCA, Illinois must recognize a claim for negligence when a governmental agency negligently performs its duties required by statute.

Illinois has drawn a distinction between ordinances which are designed for the benefit of the public at large and those designed for the benefit of individual members of the public. *Hannon v. Counihan,* 54 Ill.App.3d 509, 12 Ill.Dec. 210, 212, 369 N.E.2d 917, 919 (1977). The violation of ordinances designed for the benefit of the public at large does not support a cause of action for damages against the government in the state of Illinois. *Id. See also Arizzi v. Chicago,* 201 Ill.App.3d 368, 147 Ill.Dec. 68, 559 N.E.2d 68 (1990) (Ordinances designed to protect public at large pose no corresponding duty at common law to protect individual members of the public). The NWS was cre-

ated for the benefit of the public at large, and thus, absent a showing of some special duty owed to the plaintiffs beyond what is owed to the general public, the plaintiffs cannot survive a motion to dismiss simply by alleging a violation of the NWS's federal statutory duties.

Second, plaintiffs maintain that the NWS had a "duty to warn the plaintiffs and the failure to do so resulted in injury to the plaintiffs." The duty to warn, however, is predicated upon the existence of unequal knowledge, actual or constructive, and that the defendant, possessing such knowledge, knows or should know that harm might occur if no warning is given. *Kirby v. General Paving Company,* 86 Ill.App.2d 453, 229 N.E.2d 777, 779 (1967). Here, the plaintiffs concede in their complaints that the NWS "failed to detect, or to recognize ... tornadic thunderstorm ... and other severe ... tornado activity." (Compl. ¶ 33(a)). Plaintiffs further allege that the NWS's agents failed to "adequately interpret the radar signatures" and therefore, were unable to sufficiently detect the approaching weather. (Compl. ¶ 34). The plaintiffs admit that the NWS did not have superior knowledge, arguing rather, that the NWS should have had superior knowledge. What the NWS "should have known" is insufficient to give rise to a duty to warn, the NWS must actually have superior knowledge. Likewise, the NWS did not create the hazard. *See Sculles v. American Environmental Products, Inc.,* 227 Ill. App.3d 741, 169 Ill.Dec. 784, 786, 592 N.E.2d 271, 273 (1992) (recognizing that the "[i]f the defendant is not liable for the existence of the hazard in the first instance, he is under no duty to warn of it").

Finally, the plaintiffs claim that since the NWS "voluntarily took upon itself the responsibility of issuing weather forecasts and severe local storm warnings ... liability will attach where the voluntary acts are performed negligently and resulted in injury." While there is a dearth of Illinois case law specifically on this subject, Illinois courts repeatedly have held that when a governmental institution "acts for the benefit of the general public, it owes no duty to a particular member of the public, unless a

plaintiff can show that a defendant owed a 'special duty' to a particular individual." *Schnering v. Midlothian Park District,* 219 Ill.App.3d 664, 162 Ill.Dec. 94, 96, 579 N.E.2d 908, 910 (1991). *See also Fryman v. JMK/Skewer, Inc.,* 137 Ill.App.3d 611, 92 Ill. Dec. 178, 484 N.E.2d 909 (1985) (no duty for local health board to warn patrons of a restaurant of possible exposure to contaminated foods, even though the health board knew of the danger); *Jones v. Willow Springs,* 240 Ill.App.3d 235, 181 Ill.Dec. 225, 608 N.E.2d 298 (1992) (local water commission not liable for negligently maintaining water supply which prevented the fire department from extinguishing a fire at a local bar). This rule, which was established in part by the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), covers federal as well as state and local agencies. *Estate of Warner v. United States,* 743 F.Supp. 551 (N.D.Ill.1990); *Davis v. United States,* 1993 WL 410148 (N.D.Ill. 1993). *See also Grady v. Bi–State Development Agency,* 151 Ill.App.3d 748, 104 Ill.Dec. 427, 502 N.E.2d 1087 (1986) (holding that a bi-state development agency created as a result of an agreement between the States of Illinois and Missouri was protected by the Tort Immunity Act). The plaintiffs have not alleged facts that would differentiate them from the general public and create a special duty. As a matter of law, plaintiffs have simply not alleged any facts which create a special duty owed by the NWS to the plaintiffs under Illinois state law.

Thus, since Illinois does not provide a cause of action against private parties that is analogous to the claims the plaintiffs have asserted against the United States, we agree with the defendant that this is an additional, alternative ground warranting dismissal of the plaintiffs' complaints.

### CONCLUSION

For the foregoing reasons, plaintiffs complaints in the above captioned matters are dismissed in their entirety.